# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually; and ATLANTIC BUILDING SYSTEMS, LLC, a
Delaware corporation, doing business as ARMSTRONG STEEL CORPORATION.

Defendants.

---

## COMPLAINT

---

Plaintiff General Steel Domestic Sales, LLC, d/b/a General Steel Corporation, a Colorado limited liability company ("General Steel"), by and through its undersigned counsel, for its Complaint against the above-named Defendants, states and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1338(a) and (b), 1331, 15 U.S.C. 1121(a).  By this action, General Steel asserts claims which arise under the Lanham Act, common law defamation, and other related common law tort claims.

2.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over claims herein which are not based upon federal statute, since these claims are so related to claims in this action that are within the Court's original jurisdiction that they form part of the same case or controversy.

1

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because the Defendants transact business, are subject to personal jurisdiction, and therefore, reside or may be found in this judicial district.  In addition, Defendants' tortious conduct and statutory violations claimed herein occurred in this judicial district.

## THE PARTIES

4.      Plaintiff General Steel is a Colorado limited liability company having its principal place of business located in Jefferson County at 10639 Bradford Road, Littleton, CO 80127.

5.      Defendant Ethan D. Chumley ("Chumley") is an individual who, upon information and belief, resides in Douglas County at 6533 Lost Canyon Ranch Road, Castle Rock, CO 80104.

6.      Defendant Atlantic Building Systems LLC d/b/a Armstrong Steel Corporation, is a Delaware Corporation with its principal place of business in Arapahoe County at 5889 Greenwood Plaza Boulevard, Greenwood Village CO 80111.

## FACTS

7.      General Steel is one of the nation's leading direct sellers of pre-engineered steel building systems.

8.      Defendants Chumley and Armstrong have been sued twice in the United States District Court for the District of Colorado for false advertising.  *General Steel Domestic Sales, LLC v. Chumley, et al.;* Civil Action No. 10-cv-01398-PAB-KLM and *General Steel Domestic Sales, LLC v. Chumley, et al.;* Civil Action No. 13-cv-00769-MSK-KMT.

9.      In May 2013, Judge Philip Brimmer issued a 39 page ruling and Order finding Defendants Chumley and Armstrong liable for willful false advertising targeting General Steel. (**Exhibit 1**; Order dated May 7, 2013.)

10.     Defendants Chumley and Armstrong have made it their practice to retaliate against General Steel through false and misleading internet publications.  Defendants Chumley and Armstrong use the internet as an illicit weapon to harm General Steel and drive business for themselves.

11.     Defendants Chumley and Armstrong's long-time attorney, Paul M. Grant, has a long history of filing lawsuits against General Steel and related people/entities and has made it part of his business enterprise to solicit, create, provoke and file cases and lawsuits against Plaintiff for over seven (7) years, and as partially listed on his current law firm website at < http://www.ggklaw.com/Paul_M._Grant>  where all but one published opinion over Mr. Grant's twenty (20) legal year career relates to General Steel.

12.     Google AdWords® is an online advertising service that places advertising copy at the top or bottom of, or beside, the list of results Google displays for a particular search query. The advertiser controls the keywords that trigger an advertisement, advertising text and placement of the ads. Yahoo/Bing has a similar system for its search engine advertising platform which operates on the same principles.

13.     In or about early 2014, Defendants commenced a Google AdWords® Pay-Per-Click negative advertising campaign targeting Plaintiff General Steel.

14.     In or about early 2014, Defendants commenced a Yahoo/Bing Pay-Per-Click negative advertising campaign targeting Plaintiff General Steel.

15.     Defendants' run ads daily that display Google AdWords® and Yahoo/Bing advertisements prominently, normally at the top of the first internet page of ad results, when consumers search Google and Yahoo/Bing for the Plaintiff's company name "General Steel" or "General Steel Buildings."

16.     When General Steel customers, prospective customers, or others search Google and Yahoo/Bing for Plaintiff's company using the words "General Steel" or "General Steel Buildings" Defendants' pay Google AdWords® and Yahoo/Bing to display advertising, the same or similar to the below text:

> **Don't Send Them A Deposit - ArmstrongSteelBuildings.com**
> **Ad www.armstrongsteelbuildings.com/**
> **Until You've Seen These Lawsuits. Read This Before It's Too Late!**

See **Exhibit 2** hereto.

> **Before You Send a Deposit - Do Your Research First**
> **Ad www.armstrongsteelbuildings.com/ (855) 882-6555**
> **Read This Before It's Too Late!**
> **View Gallery - Virtual Building - Design It Online - 1.800.345.4610**

See **Exhibit 3** hereto.

17.     The Google AdWords® and Yahoo/Bing advertisements links to the webpage <http://www.armstrongsteelbuildings.com/steel-building-industry-newsroom/?pi_ad_id=41413019706&gclid=CITLopnf074CFeY-Mgod1ngA1Q>.

18.     Defendants have replicated the Google AdWords® campaign on the Yahoo/Bing advertising platform. (**Exhibit 4** hereto).

19.     The web page includes code <robots.txt> which precludes archiving so that that historical data and changes to the web page content cannot be tracked by such services as Google

or archive.org, making it difficult to track changes to the language used on the web page. Defendants have also made efforts to block General Steel from seeing its malicious false ads by blocking the ads from being seen from General Steel's office location.

20.     Clicking through the Armstrong Steel hyperlinks takes the viewer to Armstrong Steel's website page captioned "Industry Related Legal Matters" purporting to provide a list of all lawsuits brought by, or filed against, companies in the steel building market. (The associated advertisements and landing page are hereinafter referred to as The "Industry Related Legal Matters" landing page).

21.     The Industry Related Legal Matters page contains thirty postings purporting to list litigation matters relating to companies in the steel building market.  Twenty-four of the thirty postings are about General Steel; six are about other companies in the "Industry."

22.     The Industry Related Legal Matters posts are not a complete or representative list of lawsuits and legal matters relating to companies in the steel building industry.

23.     Only one lawsuit identifying Armstrong Steel is reported, albeit deceptively. That post falsely suggests that Armstrong Steel won its case against Plaintiff, or at a minimum, fails to disclose that Armstrong Steel and Chumley lost that case at the trial level, with serious findings of unlawful behavior against Armstrong Steel and Chumley.

24.     The Industry Related Legal Matters posts contain inaccurate, incomplete, false, unfair and misleading statements and omission concerning lawsuits filed against General Steel.

25.     The Industry Related Legal Matters landing page for Defendants' advertising campaign fails to disclose any of the losses and court orders/findings in Plaintiff's favor, including losses and orders against Plaintiff's direct competitor Armstrong Steel.

26.     The Industry Related Legal Matters landing page for Defendants' advertising campaign is an inaccurate, incomplete, false, unfair and misleading comparison with Plaintiff.

27.     The Industry Related Legal Matters landing page contains marketing language soliciting and marketing to customers and prospective customers to purchase from Armstrong rather than Plaintiff.

28.     The Industry Related Legal Matters landing page is intended by Defendants to discourage new, potential, and existing customers from contacting and/or doing business with Plaintiff and mislead people searching for information about General Steel that General Steel will defraud them on any new sales.

29.     Because customers and prospective customers who are specifically searching for Plaintiff's company name "General Steel" through a Google search or a Yahoo/Bing search are shown Defendants' advertisement and directed by hyperlink to the competitor Armstrong Steel's Industry Related Legal Matters landing page, the advertisement campaign is designed to create a comparison for customers and prospects between the two companies, and divert customers looking for Plaintiff to Defendants.

30.     Because customers and prospective customers who are specifically searching for Plaintiff's company through a Google search or a Yahoo/Bing search are shown Defendants' advertisement and directed by hyperlink to the competitor Armstrong Steel's Industry Related Legal Matters landing page, the advertisement campaign is designed to discourage and deter customers and potential customers from doing business with General Steel.

31.     Customers and prospective customers of Plaintiff are falsely led to believe that the subject web page is providing an impartial, fair and accurate summary of the legal proceedings relating to the steel building industry current in 2014.

32.     The Industry Related Legal Matters page is neither accurate, complete or a fair summary of legal proceedings against General Steel generally, the particulars of each case cited or industry legal proceedings in general.

33.     Defendants' Industry Related Legal Matters Posts intentionally, recklessly, and/or negligently mischaracterize allegations, pleadings and/or orders from litigation matters against General Steel for the sole purpose of causing harm to General Steel, its reputation, and for Defendants' collective and individual financial benefit.

34.     Defendants were not/are not part of the media industry, or acting as reporters in posting false in misleading statements about General Steel's litigation history, but instead are competitors/adversaries of General Steel acting with malice and seeking unfair competitive advantage.

35.     In addition to its Google AdWords®  and Yahoo/Bing advertising campaigns, Defendants show a 'pop-up' window (the screen shot below is hereinafter referred to as "Pop-Up Advertisement"), web visitor to its own website <www.armstrongsteelbuildings.com> on certain comparative marketing pages which states:



36.     Defendants are identifying, and prospective customers would understand, the

"well-known steel building broker" is intended to, and in fact, refers to Plaintiff.  **Exhibit 5**

hereto is a screenshot of the Pop-Up Advertisement dated July 10, 2014.

37.     Defendants' publications are inaccurate and misleading as set forth below as of

July 10, 2014[1]:

38.     ***Publication 1***:

Class Action Complaint - Heinbaugh et al v. General Steel Domestic
Sales, LLC

U.S. District Court of Colorado - General Steel Corp. and its CEO Jeffrey Knight,
"infamous" telemarketers of steel-buildings, systematically defrauded their
customers, in defiance of court orders, by, among other things, taking
nonrefundable deposits and then refusing to deliver buildings for the price
advertised, a class-action complaint claims in Federal Court.
"Ron Heinbaugh's, Doug Kruger's and Sam Zambon's dealings with General
Steel occurred after the issuance of Judge Jackson's opinion, a time when

---

[1] Note that it is unclear whether previous versions of the web page contain further defamation, or
variations in language, which Plaintiff's are unaware.  Because Defendants have enabled
'norobots.txt files to preclude any version tracking of their website and hide changes from public
view, Plaintiff reserves the right to amend this Complaint as discovery progresses.

> General Steel supposedly had cleaned up its deceptive business practices.
> Unfortunately for its innocent and trusting customers, while General Steel may
> have made a few small changes to its business practices, its basic business plan
> remained focused on two overriding goals - obtain a "non-refundable" deposit
> from customers and never actually deliver a steel building to any customer for the
> price set forth in the contract."

See, **Exhibit 6** hereto, Armstrong Steel website "Industry Related Legal Matters" Printout dated

June 12, 2014.

*Publication 1 is Inaccurate and Intentionally Misleading*

39.    The subject post falsely states and/or implies that General Steel is an infamous

telemarketer of steel-buildings which is a statement that is factually untrue and intentionally

misleading.

40.    This first post is intended to set up context for all subsequent posts, portraying

Plaintiff as being infamous for unlawful, fraudulent and business practices against its customers

and that all prior complaints, some dating back 15 years, represent operations at Plaintiff's

company current in 2014.

41.    False and misleading statements in the subject post include, but are not limited to,

statements that General Steel "systemically defrauds" its customers (not proven) and that

General Steel's "basic business plan" is to obtain a non-refundable deposit and never actually

deliver a steel building to any customer for the price set forth in the contract (not proven).  None

of these false and misleading statements are true statements about General Steel in 2014 when

Defendants posted them.

42.    The "*Heinbaugh*" class action referenced in the subject post was filed by

Defendants' attorney Grant.

9

43.     The subject posts failed to state or disclose that the allegations were contested and were never proven.

44.     The inflammatory and false allegations selectively published by Defendants on the Industry Related Legal Matters page were posted in a way where an average reader would, on balance, read them as fact, as though proven in court before a judge and jury.

45.     The subject post failed to state at the outset that the statements contained therein were unproven 'allegations' in a court document.  Instead, the words "a class-action complaint claims in Federal Court" appear at the end of the first sentence in a grammatically incorrect and intentionally confusing way designed to create an impression that Plaintiff is an infamous "telemarketers of steel-buildings, systematically defrauded their customers, in defiance of court orders."

46.     Defendants knew that the allegations in the "*Heinbaugh*" class action complaint were misleading and incomplete when they published the subject post, or posted the statements in reckless disregard for the truth or at least with negligence.  Defendants further acted with malice in publishing the subject post.

47.     Attorney Paul M. Grant abandoned his class action as to all other potential class action plaintiffs and dismissed the class action without proving the allegations contained therein or fulfilling his duties to the absent putative class members.

48.     Upon information and belief, attorney Grant's knowledge and conduct should be imputed to his clients Chumley and Armstrong.

49.     The settlement agreement between General Steel and the three named parties specifically stated that General Steel made no admissions of any kind in resolving the matter.

50.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with and/or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

51.     Upon information and belief, Defendants' attorney Grant provided Defendants with the Heinbaugh and the other "lawsuits" to post on Defendants' website and/or otherwise use on the internet to harm General Steel, promote his own law practice and disparage a company, Plaintiff, he regularly brings lawsuits against.

52.     Upon information and belief, attorney Grant and/or other attorneys for Defendants reviewed, participated and/or approved the false and misleading information concerning cases reported on the "Industry Related Legal Matters" page.

53.     Subsequent changes to the "Industry Related Legal Matters" seek to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

54.     ***Publication 5***

### Attorney General Madrid Warns New Mexico Churches About Colorado Metal Building Company

New Mexico Attorney General — Attorney General Patricia Madrid issued a consumer alert, directing her warning at churches or other organizations that might be considering the construction of prefabricated steel buildings through General Steel, a Lakewood, Colorado-based company saying:

"The Colorado Attorney General's Office has filed a lawsuit against General Steel after receiving hundreds of complaints, including a number from New Mexico consumers. In recent months, General Steel's advertising in New Mexico has been targeting church congregations who may be looking at adding on to their churches. The Colorado Attorney General's office informed my office that during their investigation, they discovered approximately one-fourth of consumers from

around the nation who were defrauded by this company were churches, each of which lost almost $10,000."

***Publication 5 is Inaccurate and Intentionally Misleading***

55.     The statements published are unproven allegations and were/are contested.

56.     Defendants publish this nine year old 2005 story falsely stating or implying that the 'consumer alert' and lawsuit are current in 2014 and pertain to customers and potential customers seeking to purchase buildings now.

57.     Defendants intentionally fail to disclose the date of the press release, knowing that this omission will suggest that the 'consumer alert' and lawsuit are current in 2014.

58.     Defendants present the press release in the current tense, without advising readers that the press release was issued nine years ago and the entire matter was fully resolved in 2007. To the extent Defendants are relying on allegations made against Plaintiff in prior Attorney General proceedings from 2004, Defendants recklessly, intentionally and knowingly are falsely portraying that that those allegations are true and accurate in 2014.

59.     The Attorney General proceedings and alleged practices at issue were never proven and were resolved to the Attorney General's satisfaction long ago and are not at issue in 2014.

60.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

61.     The subject Post is not full, complete and fair reporting of the subject matter.

12

62.     Defendants have selectively published inflammatory materials out of context.

63.     Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

64.     *Publication 6*

### General Steel Domestic Sales, LLC v. Chumley

U.S. District Court of Colorado — For several years, defendant Ethan Daniel Chumley worked for General Steel Domestic Sales, LLC, doing business as General Steel Corporation ("General Steel"). Upon leaving, Chumley worked for Olympia Steel, a competitor of General Steel. He then formed Atlantic Building Systems, LLC, doing business as Armstrong Steel Corporation ("Armstrong"), which sells pre-engineered steel metal buildings throughout the world in competition with General Steel and Olympia. General Steel initiated this trademark and unfair competition action on June 16, 2010.

Armstrong has filed counterclaims, alleging that General Steel has made disparaging comments about Armstrong to customers and potential customers of Armstrong, including that "Armstrong does not have proper facilities; that it consists of one or two individuals; that those individuals were fired from General Steel for committing fraud against customers; that Armstrong would take the customers [sic] money and not deliver the building ordered; and that Armstrong Steel would soon be out of business." Docket No. 23 at 19-20, ¶ 18. Armstrong further alleges that, during a May 4, 2010 meeting, General Steel wrongfully received confidential information about Armstrong from Jon Abbotts, an Armstrong employee, and used that information to aid in its efforts to disparage Armstrong. Armstrong contends that the disparagement has resulted in lost profits and goodwill.

*Publication 6 is Inaccurate and Intentionally Misleading*

65.     Defendants misrepresent by omission and seek to deceive readers by failing to disclose that that this is a lawsuit involving Defendants, and not any third party action.

66.     Defendants are intimately aware of the actual facts involved in this lawsuit since they were parties in the lawsuit.

67.     The statements published are unproven allegations and were/are contested.

68.     Defendants' repeat unsubstantiated allegations as facts in the counterclaims they filed in *General Steel v. Chumley and Armstrong Steel,* 2010 cv 01398, when the attached U.S. District Court Order *dismissed* their counterclaims.  (**Exhibit 7**, Order dated June 10, 2011).

69.     Defendants fail to disclose that their counterclaims and allegations they represent as facts were dismissed by court order.  *Id*.

70.     Defendants further failed to disclose that General Steel significantly won the lawsuit after trial as set forth in the 39 page Order from United States District Judge Philip Brimmer of the U.S. District Court for the District of Colorado.  (**Exhibit 1**).

71.     The Court found that Defendants Chumley and Armstrong willfully violated the federal Lanham Act's false advertising prohibitions, entering a large disgorgement of profits award in favor of General Steel, and enjoining Armstrong's false advertising. (**Exhibit 1**).

72.     Defendants seek to portray the subject lawsuit in a way that falsely and misleadingly suggests that Plaintiff's lawsuit was unfounded or that Armstrong succeeded on its claims.

73.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter..

74.     The subject Post is not full, complete and fair reporting of that case.

75.     Defendants have selectively published inflammatory materials out of context.

14

76.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

77.    ***Publication 9***

### Findings, Conclusions & Order of Judgment in STATE OF COLORADO vs. GENERAL STEEL DOMESTIC SALES, LLC, dba GENERAL STEEL

U.S. District Court of Colorado – The salespersons talked about the "clearance buildings" as if they were sitting on the ground somewhere just waiting to be purchased at bargain prices, sometimes providing their locations such as in Texas or Arizona or some such. At times this was further refined to claim that such buildings had been returned by such major corporations as Boeing and K-Mart. These claims were patently false. General Steel does not even argue now that Boeing or K-Mart ever purchased or returned a building.

Given the extent of the violations over a several-year period, the Court concludes that, except as provided below, General Steel and Jeffrey Knight deserve the maximum civil penalty allowed by law. The gist of the complaint was that the defendants engaged in deceptive practices in the marketing of the buildings and dealerships. This is broken down into six claims: (1) false representations as to the characteristics of goods, services or property, (2) material omissions concerning goods, services or property, (3) knowing misrepresentations as to the source of goods, (4) false or misleading statements regarding price, (5) failure to set forth terms and conditions of sale in a contract, and (6) bait and switch advertising.

***Publication 9 is Inaccurate and Intentionally Misleading***

78.    This posting is not from the U.S. District Court but from a 2004 non-final ruling by the state court in the aforementioned case brought against General Steel in 2004 by the Colorado Office of Attorney General.

79.    Defendants have incompletely and inaccurate published inflammatory portions of the ruling without disclosing that it is from 2004 and non-final.

80.    Defendants portray the lawsuit in present tense as though it is ongoing.

81.     Further, the ruling relates to alleged sales practices of General Steel's that are from approximately fourteen years ago.

82.     Defendants fail to disclose the outcome of the proceeding with the Attorney General or the terms of the settlement of which they are fully aware.

83.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

84.     The subject Post is not full, complete and fair reporting of that case.

85.     Defendants have selectively published inflammatory materials out of context.

86.     Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

87.     ***Publication 11***

### General Steel and Bernard Madoff: Business Ethics in Reverse

General Steel gave the church the impression all along that they manufactured metal buildings. General Steel is listed on the website of the industrial directory called MacRAE's Blue Book, with the following misleading information: "Steel building construction; manufactures prefabricated metal buildings & components; travel agency Travel agents, Tour arrangement services, Travel agencies, Chartering services, Structures and Building and Construction and Manufacturing Components and Supplies. "Here is the truth: General Steel is a sales company that does not manufacture the metal shell and the components it sells. This is deceptive to say the least.

***Publication 11 is Inaccurate and Intentionally Misleading***

88.     Defendants misrepresent this as this is not from a lawsuit, but rather is a republication of an unsubstantiated defamatory internet posting apparently by a disgruntled General Steel customer from five years ago.

89.     The statements published are unproven allegations and are contested.

90.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales.

91.     The subject Post is not full, complete and fair reporting of that matter.

92.     Defendants have selectively published inflammatory materials out of context.

93.     Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

94.     ***Publication 13***

### College Park Pentecostal v. General Steel Corp

U.S. District Court of Maryland - Kahn signed and initialed the Agreement on January 11, 2007, the same day he received it, and immediately faxed it back to General Steel. On January 12, Kahn sent General Steel a check for $45,000 as a deposit under the contract. Approximately one year later, in January 2008, Kahn signed a "Building Change Order," which added a mezzanine level to the planned building, and sent General Steel another check for $50,000. Due to the increased price of the mezzanine, however, the parties later executed a second Change Order that restored the original design of the building. Notably, Defendants never returned the $50,000 following the execution of the second Change Order.

The Church submits that following payment of the deposits, Defendants informed it that they would in fact provide no assistance with site planning, zoning, or construction and would only supply materials for the building. The Church thereupon demanded that Defendants return the deposits, claiming it had no

intention of entering into a "materials only" contract, but Defendants refused. The instant lawsuit was filed on August 6, 2009.

***Publication 13 is Inaccurate and Intentionally Misleading***

95.    This portion of a ruling published by Defendants on their Industry Related Legal Matters page is from an order compelling arbitration.

96.    The statements published are unproven allegations and are contested.

97.    Defendants fail to disclose that the publication is not a final resolution of the dispute.

98.    The snippets published on the Industry Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

99.    The subject Post is not full, complete and fair reporting of that case.

100.    Defendants have selectively published inflammatory materials out of context.

101.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

102.    ***Publication 14***

### Rock Limo Service v. General Steel Domestic Sales

U.S. District Court of Illinois - Arbitrator Kral made the following findings: On December 9, 2005, Akrap signed a purchase agreement with General Steel, under which it would pay General Steel $395,000 for the fabrication of steel components for construction of a building. (Id. ¶ 10; Award of Arbitrator, Ex. B to Amended Petition [14-2], (hereinafter "Award") at 2-3.) The erection itself, and the concrete and finishing work, were to be performed by third parties. (Id.) Akrap made a $100,000 deposit payment upon signing the purchase agreement, but later revoked that wire transfer, and General Steel was unable to access the

funds. (Id. at 2-3.) The Arbitrator determined that this first agreement was never consummated and was not binding. (Id. at 3.)

The parties continued negotiations, however: Akrap's attorney made handwritten modifications to the December 9, 2005 purchase agreement and sent the marked-up document back to General Steel on December 16, 2005. (Id.) General Steel returned the modified purchase agreement three days later, with two additional modifications. (Id.) No modifications or amendments were made to the purchase agreement after December 19, 2005, and the Arbitrator concluded that the document General Steel sent to Akrap on December 19, 2005 was a binding contract. (Id. at 4.) Indeed, Akrap sent General Steel an automated deposit transfer dated December 21, 2005 for the $100,000 deposit called for under the contract, and General Steel successfully deposited the funds. (Id.) When the deal stalled, Petitioners demanded return of their deposit, but General Steel refused to pay it.

### Publication 14 is Inaccurate and Intentionally Misleading

103.    The statements published are unproven allegations and are contested.

104.    The statements published do not reveal that General Steel's customer lost its claims in arbitration and its appeal in federal court.

105.    The statements published do not reveal that General Steel's customer was found to have breached its contract with General Steel.

106.    Defendants fail to disclose the status of the proceeding.

107.    The subject Post is not full, complete and fair reporting of that case.

108.    Defendants have selectively published inflammatory materials out of context.

109.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

110.   Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

111.   *Publication 17*

### Texas Echo Land & Cattle LLP v. General Steel Domestic Sales LLC Texas Court of Appeals - Texas Echo sued General Steel in July 2011 for breach of contract, misrepresentation, and violation of the Texas Deceptive Trade Practices Act.According to one of the trial court's unchallenged fact findings, Texas Echo terminated the agreement and demanded that General Steel return the $14,000 deposit.

*Publication 17 is Inaccurate and Intentionally Misleading*

112.   The statements published are unproven allegations and were/are contested.

113.   The statements published do not reveal that General Steel's customer lost its claim in both the state court of Texas and the Texas Court of Appeals.

114.   Defendants fail to disclose the status of the proceeding.

115.   The subject Post is not full, complete and fair reporting of that case.

116.   Defendants have selectively published inflammatory materials out of context.

117.   The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

118.   Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

119.   *Publication 20*

### General Steel Domestic Sales v. Hogan & Hartson, LLP Colorado Court of Appeals – These facts are not disputed: plaintiffs retained Ty Cobb and his firm, Hogan & Hartson, to defend General Steel against an action

20

brought by the Colorado Attorney General (the Colorado AG action). According to plaintiffs, they sought Cobb's services because they were aware, based on a Denver Post article and other references, that Cobb was experienced in representing white collar defendants in complex, high-stakes cases like the Colorado AG action. The parties' representation agreement provided, as relevant here, that Cobb would "have primary responsibility for the matter, with assistance as required from ... other attorneys in the litigation group," and that the parties would submit any dispute over legal fees to binding arbitration.

Cobb was actively engaged in the Colorado AG action for approximately two months, but then moved his practice to Hogan & Hartson's Washington, D.C. office, effectively terminating his involvement in General Steel's defense. Although other Hogan & Hartson attorneys remained active in the case, plaintiffs retained another law firm. Thus, for the remainder of the Colorado AG action, plaintiffs were represented by, and paid legal fees to, both Hogan & Hartson and the other firm. Ultimately, plaintiffs settled the action with the Colorado AG.

Plaintiffs subsequently initiated this action against Cobb and Hogan & Hartson, alleging fraud, breach of fiduciary duty, breach of contract, and violation of the CCPA. As relevant here, the CCPA claim included allegations that defendants had engaged in the "deceptive trade practice" of "`bait-and-switch' advertising" as defined in section 6-1-105(1)(n)(I), C.R.S.2009. In response, defendants filed a motion to dismiss the CCPA claim and a motion to compel arbitration of the contract claim pursuant to the terms of the parties' representation agreement.

The trial court granted both of defendants' motions.

### *Publication 20 is Inaccurate and Intentionally Misleading*

120.    The statements published are unproven allegations and were/are contested.

121.    This publication is inaccurate and misleading since it does not disclose that Plaintiff won on its counterclaim in the arbitration case, which resulted in an arbitrator's award finding that Hogan & Hartson had breached its contract with Plaintiff.

122.    This litigation has no relevance to Plaintiff's customers or potential customers.

123.    Defendants fail to disclose the status of the proceeding.

124.    The subject Post is not full, complete and fair reporting of that case.

125.    Defendants have selectively published inflammatory materials out of context.

126.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

127.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

128.    ***Publication 22***

### Skillman v. General Steel Settlement Fund

U.S. District Court of Massachusetts - This action involves a claim for damages in the amount of $15,971.18 excluding interest, and seeks to repay the Bank of America money loaned to her which she used toward her contract with General Steel Corporation for building materials. Skillman again states that there was a class action settlement with General Steel Corporation, handled by the General Steel Settlement Fund, and she concedes that, in fact, she received distributions of settlement funds. While not entirely clear, it appears that Skillman claims that these distributions were not enough to compensate her.

***Publication 22 is Inaccurate and Intentionally Misleading***

129.    The statements published are unproven allegations and were/are contested.

130.    This posting does not disclose that Skillman's claim was dismissed from the federal court and is unproven.

131.    Defendants fail to disclose the status of the proceeding.

132.    The subject Post is not full, complete and fair reporting of that case.

133.    Defendants have selectively published inflammatory materials out of context.

134.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

135.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

136.    ***Publication 23***

### General Steel Corporation v. Donna Collins

Kentucky Court of Appeals - On December 15, 2004, Donna Collins, d/b/a Collins Game Room & Restaurant (referred to collectively as "Collins"), filed a complaint against General Steel. Collins sought to recover the $24,000.00 deposit made in May toward the purchase of the steel building. General Steel answered and denied that Collins was entitled to a refund of the deposit. It also demanded that the complaint be dismissed and that the matter be referred to arbitration "as set forth within the contract and pursuant to motion filed herein." Following a hearing, the trial court denied the motion. This appeal followed.

*Publication 23 is Inaccurate and Intentionally Misleading*

137.    This posting does not disclose that the statements published are unproven allegations and were/are contested.

138.    Defendants fail to disclose the status of the proceeding.

139.    The subject Post is not full, complete and fair reporting of that case.

140.    Defendants have selectively published inflammatory materials out of context.

141.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

142.     Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

143.     *Publication 25*

### AT&T Corp v. General Steel Domestic Sales, LLC

U.S. District Court of Colorado — This is a breach of contract case. Plaintiff AT&T Corporation alleges that Defendant General Steel, Inc.: (1) breached the contract between them; and (2) was unjustly enriched by Plaintiff's services.

**Publication 25 is Inaccurate and Intentionally Misleading**

144.     This posting does not disclose that the statements published are unproven allegations and were/are contested.

145.     This posting about an 8-year-old dispute over phone bills having nothing to do with the steel building industry, potential customers of Plaintiff or service issues between Plaintiff and its customers.

146.     Defendants fail to disclose the status of the proceeding.

147.     The subject Post is not full, complete and fair reporting of that case.

148.     Defendants have selectively published inflammatory materials out of context.

149.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

150.     Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

151.     *Publication 26*

### Elete Enterprises LLC v. General Steel Corporation

Michigan Court of Appeals - Plaintiff's complaint alleged that it entered into a purchase agreement with defendant on September 6, 2005, pursuant to which defendant agreed to provide plaintiff with a prefabricated building and plaintiff agreed to pay defendant $116,553 for the building. Plaintiff further alleged that it paid defendant $30,004 as a deposit on the building as provided for in the purchase agreement and that it performed all of its obligations under the contract.

Plaintiff additionally asserted that it had yet to receive the building or building materials as required by the purchase agreement and that defendant had refused to refund the deposit. Plaintiff alleged that the failure to deliver the building or refund the deposit constituted a material breach of contract, proximately resulting in damages in the amount of $30,004.

***Publication 26 is Inaccurate and Intentionally Misleading***

152.    This posting does not disclose that the statements published are unproven allegations and were/are contested.

153.    Defendants fail to disclose that this matter was ordered to arbitration and that the plaintiff Elete never pursued the claim.

154.    Defendants fail to disclose that these allegations were never proven.

155.    Defendants fail to disclose that General Steel did not breach the contract.

156.     Defendants fail to disclose the status of the proceeding.

157.    The subject Post is not full, complete and fair reporting of that case.

158.    Defendants have selectively published inflammatory materials out of context.

159.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

160.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

161.    *Publication 27*

**Evangelistic Outreach Center v. General Steel Corporation**

North Carolina Court of Appeals - Defendant, General Steel Corporation, is a Colorado company that sells prefabricated steel buildings. Plaintiff, Evangelistic Outreach Center, is a religious institution organized as a North Carolina non-profit corporation. In June 2004, plaintiff signed an agreement to buy a building from defendant. Thereafter, a dispute arose regarding the amount that plaintiff owed for the steel building. On 25 May 2005 plaintiff filed a complaint against defendant alleging fraud, unfair and deceptive trade practices, and breach of contract.

*Publication 27 is Inaccurate and Intentionally Misleading*

162.    Defendants fail to disclose that this matter related to an arbitration proceeding.

163.    This posting does not disclose that the statements published are unproven allegations and were/are contested.

164.    Defendants fail to disclose that the contract in dispute was from 2001, some 13 years ago.

165.    Defendants fail to disclose the status of the proceeding.

166.    The subject Post is not full, complete and fair reporting of that case.

167.    Defendants have selectively published inflammatory materials out of context.

168.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

169.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

170.    ***Publication 29***

### David B. Fisher; Bison Constructors Inc; & Mark Yakowec v. General Steel Domestic Sales, LLC

U.S. District Court of Colorado - Plaintiffs are former customers of Defendant General Steel Domestic Sales, LLC. The individual Defendants are present and former General Steel officers and managers. In 2007, Plaintiffs entered into contracts with General Steel to purchase pre-engineered steel structures. These contracts all include identical arbitration clauses providing that any controversy or claim arising out of or relating to [the] contract, or the breach thereof shall be resolved by arbitration...On June 28, 2010, Plaintiffs filed this action in this Court. Shortly thereafter, Defendants filed a motion to compel arbitration.

***Publication 29 is Inaccurate and Intentionally Misleading***

171.    This posting does not disclose that the statements published are unproven allegations and were/are contested.

172.    This posting relates to another putative class action lawsuit filed by attorney Grant.

173.    The putative class action was ordered to arbitration by the federal court but Defendant Grant subsequently refused to comply with the arbitrator's orders.

174.    The allegations were never proven and arbitrator Joseph Bellipanni of the Judicial Arbiter Group, Inc., awarded attorney's fees to General Steel.

175.    Defendants fail to disclose the status of the proceeding or Plaintiff's allegations or defenses.  The knowledge and conduct of Defendants' attorney Grant should be imputed to Defendants.

176.    The subject Post is not full, complete and fair reporting of that case.

177.    Defendants have selectively published inflammatory materials out of context.

178.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

179.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

180.    *Publication 32*

## Polyrock Technologies, LLC v. General Steel Domestic Sales, LLC

U.S. District Court of Colorado - When General Steel and Genstone began marketing their own products, they deceptively used advertising and marketing materials received from and depicting the products of PolyRock's predecessors to advertise the products that General Steel and Genstone were now manufacturing on their own. General Steel's actions in this regard, as well as its use of misappropriated technology to manufacture products without permission, are not the first time it has engaged in deceptive trade practices.  In December of 2004, a judge of the Jefferson County, Colorado, District Court found that in connection with the sale of steel buildings General Steel "for years engaged in sales practices that were riddled with misrepresentations and omissions" and imposed civil penalties against Jeff Knight of $200,000 and against Defendant Kevin Kissire of $20,000 and permanently enjoined defendants General Steel, Knight, and Kissire from engaging in deceptive sales practices or actions contrary to the Colorado Consumer Protection Act. Genstone and General Steel acted in bad faith, willfully violated the injunction entered by the Jefferson County District Court, and willfully and wantonly disregarded the rights of plaintiff.

**Publication 32 is Inaccurate and Intentionally Misleading**

181.    This posting does not disclose that the statements published are unproven allegations and were/are contested.

28

182.     In this matter, General Steel moved in federal court to strike the irrelevant allegations relating to the 2004 case brought by the Colorado Office of Attorney General.

183.     The lawsuit brought by Polyrock in 2004 against General Steel and an affiliated company related to claims over technology for a siding product.  The lawsuit was settled and dismissed.  No monetary payments were made by any party.

184.     Defendants fail to disclose the status of the proceeding.

185.     The subject Post is not full, complete and fair reporting of that case.

186.     Defendants have selectively published inflammatory materials out of context.

187.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

188.     Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

189.     *Publication 33*

### Angermann v. General Steel Domestic Sales

U.S. District Court of Colorado - Plaintiffs executed purchase orders for three buildings to be supplied by defendant General Steel Domestic Sales, LLC ("General Steel"), in May, 2005. The individual defendants were various officers and employees of General Steel at the time the purchase orders were signed. Plaintiffs claim on behalf of a putative class of similar purchasers that these purchase orders were deceptive and misleading, and, indeed, had been found to be so by a Colorado state district court at the time plaintiffs and the other members of the putative class executed their purchase orders.

They assert claims under the Colorado Consumer Protection Act as well as for civil theft and fraud in the inducement, and seek declaratory and monetary relief on behalf of themselves and the putative class.

**Publication 33 is Inaccurate and Intentionally Misleading**

190.     This posting does not disclose that the statements published are unproven allegations and were/are contested.

191.     This is a misleading and inaccurate publication from yet another putative class action lawsuit filed by Defendants' attorney Paul M. Grant.

192.     Approximately two years after dismissing the *Heinbaugh* case referenced in Publication 1 above, Defendants' attorney Grant filed a virtually identical putative class action in 2010 in *Angermann et. al. v. General Steel*, U.S. District Court for the District of Colorado, case no. 10-cv-00711 REB-MJW.

193.     In both cases, the claim brought by attorney Grant was that the General Steel contract was allegedly illegal during 2005 due to alleged non-compliance with a court order. The only difference in the class allegations in these two suits is that Defendants' attorney Grant changed the date from "December 31, 2005" to "approximately November 30, 2005."

194.     Defendants' attorney Grant's cut and paste Complaint even had the same significant typo where he alleges in paragraphs 15 and 14 respectively that the "contact" [rather than "contract"] was misleading and unenforceable.

195.     As in *Heinbaugh*, the federal court compelled the matter to arbitration.  Attorney Grant never pursued the matter on behalf of a class in arbitration.

196.     Defendants misleadingly publish these contrived and unproven allegations as facts without context.

197.    Defendants fail to disclose the status of the proceeding.

198.    The subject Post is not full, complete and fair reporting of that case.

199.    Defendants have selectively published inflammatory materials out of context.

200.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff ,and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

201.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

202.    *Publication 35*

## Olympia Steel Building Systems Corp v. General Steel Domestic Sales

Olympia and Universal contend that the Defendants have engaged in defamatory sales techniques, which disparaged Olympia during sales calls. They commenced this action in the Court of Common Pleas of Allegheny County, Pennsylvania. They request and / or have asserted claims of: defamation; commercial disparagement; interference with prospective contractual relations; a permanent injunction; a preliminary injunction; "enterprise liability / piercing the corporate veil"; and unfair competition and false advertising under the Lanham Act.

*Publication 35 is Inaccurate and Intentionally Misleading*

203.    This posting does not disclose that the statements published are unproven allegations and were/are contested.

204.    Defendants misleadingly publish these contrived and unproven allegations as facts without context.

205.    The published statements were never proven and vigorously disputed.

31

206.    The litigation was settled many years ago, yet no dates or context is provided.

207.    Defendants fail to disclose the status of the proceeding.

208.    The subject Post is not full, complete and fair reporting of that case.

209.    Defendants have selectively published inflammatory materials out of context.

210.    The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

211.    Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

212.    ***Publication 36***

## Michael & Jessamine Guerzon v. General Steel Domestic Sales, LLC

U.S. District Court of Colorado - I will note that counsel for these parties are skating on thin ice. The multitude of cases with these same counsel have not gone unnoticed. And while the present matter cannot remain in this Court, it does not appear that it should be refiled anywhere. The Final Arbitration Award at issue here is clear and does not appear to require any judicial interpretation. It is strongly suggested that counsel put aside their obvious personal animosity and behave like the professionals they are.

***Publication 36 is Inaccurate and Intentionally Misleading***

213.    The *Guerzon* case referenced in this publication is yet another case brought by Defendants' attorney Paul M. Grant against General Steel.

214.    After an arbitration hearing, Defendants' attorney Grant's clients lost on all of their claims for relief, and the arbitrator awarded General Steel $40,304 in attorney's fees.

215.     Defendants again inaccurately and incompletely and misleadingly quote from irrelevant litigation matters in order to perpetuate their campaign of false advertising and defamation.  Defendants' attorney Grant's knowledge and conduct should be imputed to Defendants.

216.     Defendants fail to disclose the status of the proceeding.

217.     The subject Post is not full, complete and fair reporting of that case.

218.     Defendants have selectively published inflammatory materials out of context.

219.     The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

220.     Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

221.     *Publication 37*

## James Conner v. General Steel Domestic Sales, LLC

U.S. District Court of Colorado - This action involves the purchase and sale of a custom, pre-engineered steel building. A dispute arose between the parties concerning the building.

**Publication 37 is Inaccurate and Intentionally Misleading**

222.     This posting does not disclose that the statements published are unproven allegations and were/are contested.

223.     The *Conner* case referenced in this publication is yet another case brought by Defendants' attorney Paul Grant against General Steel.

33

224. The claim was compelled to arbitration.  Attorney Grant filed it as part of a putative consolidated arbitration case along with *Fisher* (Publication 29 above), but his consolidation efforts were rejected by arbitrator Joseph Bellipanni and General Steel was awarded attorney's fees.

225. Defendants again inaccurately and incompletely and misleadingly quote from irrelevant litigation matters in order to perpetuate their campaign of defamation.  Defendants' attorney Grant's knowledge and conduct should be imputed to Defendants.

226. Defendants fail to disclose the status of the proceeding.

227. The subject Post is not full, complete and fair reporting of that case.

228. Defendants have selectively published inflammatory materials out of context.

229. The snippets published on the Industry Related Legal Matters page are incomplete and inaccurate and intentionally published to discourage new and existing customers from doing business with or contacting Plaintiff, and mislead people searching for information about General Steel that General Steel will defraud them on any new sales in 2014 and thereafter.

230. Subsequent changes to the "Industry Related Legal Matters" seeking to add disclaimers fail to cure the false, misleading and incomplete nature of the post.

231. Defendants' Pop-Up Advertisement is false, inaccurate, incomplete and misleading in at least the following ways:

    a. Defendants' suggestion that they "hear from their customers" falsely suggests that their customers are the source of information about the complaints, and the websites to which people are being directed.  In fact, Defendants created and are

the primary and overwhelming source of negative information and websites about Plaintiff to which people are being directed.

b. In 2014, Plaintiff is not a 'once well-known' steel building broker, but continues to be a market leader and established steel building company.

c. In 2014, Plaintiff does not have an 'atrocious reputation' independent of Defendants' activities, or unsatisfactory delivery rates compared to the industry as a whole, or in comparison with Armstrong Steel.

d. In 2014, Plaintiff is not "back to its old tricks, targeting unsuspecting consumers." a reference to Attorney General issues long resolved but re-published by Defendants for their own nefarious purposes.

Defendants' Pop-Up Advertisement states explicitly, or implicitly, that Defendants Armstrong and Chumley have impeccable reputations in the industry and with consumers, which is untrue and false comparative advertising.

## FIRST CLAIM FOR RELIEF
### (Unfair Competition and Unfair Trade Practices Under the Lanham Act)

232.    Plaintiff incorporates the preceding paragraphs as if set forth herein.

233.    Defendants' activities and statements as identified above, including the Pop-Up Advertising, AdWords® and Yahoo/Bing advertisement placements, organic search results and the landing page for that advertisement, were designed for commercial advertising purposes and promotion between competitors for the purpose of influencing consumers to buy Defendants' goods and services and to discourage and deter customers and potential customers from not buying Plaintiff's goods and services.

234.    Defendants' dissemination and publication is available through Google AdWords®, Yahoo/Bing and organic search to any consumer searching for information about Plaintiff or steel building manufacturers in general.

235.    Defendants Armstrong and Chumley intend consumers to believe their steel buildings are better and that their company is trustworthy in comparison to Plaintiff in engaging in the above advertisements, activities and statements.

236.    Defendants Armstrong and Chumley fail to disclose their own history of litigation, court losses, consumer complaints, conflicts of interest, involvement, biases and business practices and by implication convey that their reputations are exemplary.

237.    Defendant's own history of business practices and court rulings against them, which are not disclosed but known to Defendants, establish Defendants' propensity towards fraud, deceit, unlawful practices and ethics they attempt to push onto Plaintiff's reputation.

238.    Defendants have determined that the best defense is offense, attempting to distract customers from their own sordid history of fraud, deceit, unlawful practices and ethics.

239.    Defendants intend to have consumers not do business with Plaintiff, and/or to bring litigation or sue Plaintiff, or otherwise bring claims against Plaintiff.

240.    Defendants' advertisements, comparisons, activities and statements are false, and/or misleading in violation of 15 U.S.C. § 1125(a)(1)(A) and (B).  Defendants' commercial advertisements misrepresent the nature, characteristics or qualities of Plaintiff's goods, services, or commercial activities.  Further, Defendants' advertisements misrepresent that Defendants are a legitimate industry watchdog when they are in reality malicious false advertisers.

241.     Defendants' advertisements, activities and statements were designed to, and are likely to, deceive consumers.

242.     Defendants engaged in any unfair, deceptive, untrue or misleading advertising as defined under the Lanham Act.

243.     Defendants' advertisements, activities and statements as identified above had and have a material effect on consumer purchasing decisions.

244.     Plaintiff suffered damages as a result of Defendants activities including but not limited to actual damages, special damages, incidental and consequential damages.

245.     Plaintiff is entitled to any and all damages available under law, including disgorgement of profits, statutory damages, costs and attorney fees.

## SECOND CLAIM FOR RELIEF
### (Defamation – Libel & Libel Per Se)

246.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

247.     Defendants' paid advertising scheme postings as identified above on the Industry Related Legal Matters about Plaintiff and their Pop-Up Advertising ("Defamatory Postings") above are defamatory.

248.     Defendants' Defamatory Postings are false statements under their ordinary and popular meaning.

249.     Defendants' Defamatory Postings are defamatory on their face or, alternatively, by innuendo or implication.

250.     Defendants' Defamatory Postings would generally be understood by customers, prospective customers and others to state facts that are false and misleading.

251.    Defendants' Defamatory Postings are neither accurate, complete nor a fair summary of legal proceedings within the steel building industry or as against Plaintiff.

252.    Defendants' Defamatory Postings were made negligently, with reckless disregard for the truth or were intentionally false.

253.    Defendants' Defamatory Postings were made with actual malice.

254.    Defendants' Defamatory Postings created a greater sting than the actual resolution of those cases would establish.

255.    Defendants' Defamatory Postings were made for the sole purpose of causing harm to Plaintiff.

256.    Defendants' Defendants' Defamatory Postings above constitute libel because they are a negative characterization of Plaintiff General Steel coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader.

257.    Defendants' Defendants' Defamatory Postings relate to General Steel's business, trade, and profession, and therefore constitute libel per se.

258.    As a result of Defendants' defamation and libel of Plaintiff, Plaintiff has been injured and sustained actual, special, presumed and other damage as identified herein in an amount to be proven at trial.

259.    Plaintiff's damages include harm to General Steel's business reputation, humiliation, and good will.

260.    In addition, Defendants' conduct was attended by circumstances of fraud, malice and willful and wanton behavior.

261.     General Steel is entitled to punitive damages, attorney fees and other damages pursuant to Colorado law upon leave of Court.

### THIRD CLAIM FOR RELIEF
**(Intentional Interference with Prospective Business Advantage)**

262.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

263.     Defendants' Defamatory Postings are intended to cause potential customers of General Steel to not business with General Steel and instead do business with Armstrong Steel and drive clients to Defendants' attorney Paul M. Grant.

264.     It is believed that many prospective customers have not contacted and/or failed to do business with General Steel after viewing the advertising scheme and Publications.

265.     Defendants' interference with General Steel's prospective business advantage is improper.

266.     Defendants' intentional interference with the prospective business advantage of General Steel has caused General Steel to sustain actual, consequential, lost profits, and unjust enrichment/restitutionary damages.  Said amounts will be proven at trial.

267.     In addition, Defendants' conduct was attended by circumstances of fraud, malice and willful and wanton behavior.  As a result, General Steel will seek leave to be awarded punitive damages.

### FOURTH CLAIM FOR RELIEF
**(Civil Conspiracy)**

268.     Plaintiff incorporates the preceding paragraphs as if set forth herein.

269.     Upon information and belief, Defendants' attorney Paul M. Grant is and has been a co-conspirator in the acts alleged herein.  Defendants, acting as a malicious combination of two

or more persons, agreed upon an unlawful common objective to be accomplished involving

unlawful acts and unlawful purposes. Discovery may reveal other co-conspirators, including

other attorneys for Defendants.

270.    Each Defendant committed one or more overt acts in furtherance of the common

objective.

271.    As a proximate result of the conspiracy, Plaintiff has been injured and sustained

damage as identified above in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, General Steel prays for judgment against Defendants, and each of them, as follows:

1.    For actual, compensatory, special, general, consequential, incidental, exemplary, punitive and all other damages provided under law in an amount to be determined at trial.

2.    For an injunction requiring Defendants to:

 a. cease and desist its AdWords® and Yahoo/Bing advertising campaigns triggered by search keywords for Plaintiff's company name, brand or owner and officer names.

 b. cease and desist directing any people using the Internet to the Industry Legal Matters page on its website.

 c. cease and desist from advertising designed to create misleading comparisons between Plaintiff and Armstrong Steel.

 d. remove all defamatory posts from any advertising or landing page.

3.    For such other and further appropriate relief as the Court deems just and proper.

DATED: July 10, 2014

Respectfully Submitted,

 /s/ David S. Fein_____
David S. Fein, Reg. No. 18788
Patrick D. Frye, Reg. No. 30369
Building Services Group, LLC Legal Dept.
10639 Bradford Road
Littleton, CO 80127

Attorneys for Plaintiff General Steel Domestic
Sales, LLC, d/b/a General Steel Corporation