IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-01932-REB-CBS

GENERAL STEEL DOMESTIC SALES, LLC
d/b/a GENERAL STEEL CORPORATION,

      Plaintiff,

v.

ETHAN DANIEL CHUMLEY AND ATLANTIC
BUILDING SYSTEMS, LLC,

      Defendants.

---

**DEFENDANTS' FED. R. EVID. 702 MOTION TO EXCLUDE EXPERT TESTIMONY
OF MR. JASON MCDONALD**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ II

FACTUAL BACKGROUND ........................................................................................... 1

SUMMARY OF CHALLENGED TESTIMONY .............................................................. 3

ARGUMENT ............................................................................................................. 5

I.   MCDONALD'S OPINIONS ARE INADMISSIBLE BECAUSE HE IS NOT
     QUALIFIED AS AN EXPERT ON TOPICS SUCH AS THE LIKELY
     BEHAVIOR OF AN AVERAGE STEEL BUILDING CUSTOMER ........................... 6

II.  MCDONALD'S OPINIONS FAIL TO MEET THE RELIABILITY
     REQUIREMENTS OF RULE 702 ......................................................................... 8

     A.   The Opinions Are Not Reliable Because They Are Not Based on Any
          Methodology and Merely Reflect Mr. McDonald's Ipse Dixit ......................... 8

     B.   McDonald's Opinions Are Unreliable Because They Fail To Account For
          Alternative Explanations ........................................................................... 12

     C.   Opinion Nos. 2, 3, and 4 Do Not Assist the Trier of Fact ............................... 13

III. CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*103 Investors I, L.P. v. Square D Co.*,
470 F.3d 985 (10th Cir. 2006) ........................................................................ 6

*A.R. by Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*,
No. 12-CV-02197-RM-KLM, 2013 WL 5463518
(D. Colo. Sept. 30, 2013) ............................................................................. 12

*Benton v. Avedon Eng'g, Inc.*,
No. 10-CV-01899-RBJ-KLM, 2012 WL 3399367 (D. Colo. Aug. 15, 2012).......... 9, 12

*Bitler v. A.O. Smith Corp.*,
391 F.3d 1114 (10th Cir. 2004) ...................................................................... 9

*Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*,
No. 10-CV-02349-WJM-KMT, 2014 WL 1715096
(D. Colo. Apr. 30, 2014) ............................................................................... 12

*Cook v. Rockwell Int'l Corp.*,
580 F. Supp. 2d 1071 (D.Colo. 2006) .......................................................... 11

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).................................................................. 1, 5, 6, 9, 11

*Daubert v. Merrell–Dow Pharms., Inc. ("Daubert II")*,
43 F.3d 1311 (9th Cir.1995) ......................................................................... 12

*Dodge v. Cotter Corp.*,
328 F.3d 1212 (10th Cir. 2003) ...................................................................... 9

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)................................................................................. 9, 10

*Heineman v. Am. Home Prods. Corp.*,
2015 WL 1186777 (D.Colo. 2015) ................................................................ 14

*Ho v. Michelin N. Am., Inc.*,
520 F.App'x. 658 (10th Cir. 2013) ................................................................. 7

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)............................... 6

*Mitchell v. Gencorp Inc.*,
  165 F.3d 778 (10th Cir. 1999) ................................................................... 9

*Norris v. Baxter Healthcare*,
  397 F.3d 878 (10th Cir. 2005) ............................................................. 9, 10

*Ralston v. Smith & Nephew Richards, Inc.*,
  275 F.3d 965 (10th Cir. 2001) ................................................................... 6

*SolidFX, LLC v. Jeppesen Sanderson, Inc.*,
  No. 11-CV-01468-WJM-BNB, 2014 WL 983507
  (D. Colo. Mar. 13, 2014) ......................................................................... 11

*U.S. v. Garcia*,
  994 F.2d 1499 (10th Cir. 1993) ............................................................... 14

*U.S. v. Lauder*,
  409 F.3d 1254 (10th Cir. 2005) ............................................................... 11

*U.S. v. Medina-Copete*,
  757 F.3d 1092 (10th Cir. 2014) ................................................................. 7

*U.S. v. Nacchio*,
  555 F.3d 1234 (10th Cir. 2009) ................................................................. 8

*U.S. v. Rice*,
  52 F.3d 843 (10th Cir. 1995) ................................................................... 14

*U.S. v. Rodriguez-Felix*,
  450 F.3d 1117 (10th Cir. 2006) ................................................................. 5

*Warner v. Gross*,
  776 F.3d 721 (10th Cir. 2015) ................................................................... 6

**RULES**

Fed. R. Evid. 702 ................................................................. 1, 5, 6, 7, 8, 14

## **EXHIBIT INDEX**

Defendants' Fed. R. Evid. 702 Motion to Exclude Expert Testimony of Mr. Jason McDonald

| No. | Description | Page(s) |
|-----|-------------|---------|
| Exhibit A | Expert Report of Jason McDonald, dated Dec. 30, 2014 | 4, 10, 12 |
| Exhibit B | Second Expert Report of Jason McDonald, dated Feb. 25, 2015 | 4, 8, 12 |
| Exhibit C | Third Expert Report of Jason McDonald, dated Mar. 10, 2015 | 4, 8, 12 |
| Exhibit D | Various RipoffReport.com reports regarding General Steel (McDonald-0513-543) | 13 |

Defendants Ethan Daniel Chumley and Atlantic Building Systems, LLC, move the Court for an order excluding certain testimony by Plaintiff's "Internet advertising" expert, Mr. Jason McDonald. As explained herein, Mr. McDonald's opinions do not satisfy the admissibility requirements of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and they should be excluded on that basis.

## FACTUAL BACKGROUND

This case involves three substantive claims— (1) false advertising/unfair competition under the Lanham Act; (2) defamation; and (3) intentional interference with prospective business advantage. All three claims arise from a set of common facts which involve two distinct parts.

First, in February 2014, Defendants created a page on their website entitled "Industry Related Legal Matters" (the "IRLM page"). The page currently contains 37 separate posts, 20 of which relate to Plaintiff General Steel.

Most of the 20 posts involving General Steel are excerpts from legal pleadings and/or court opinions filed in various lawsuits in which General Steel was a party. All of the text in question was copied *verbatim* from fully disclosed third-party sources such as court orders published by Google. For instance, one post on the IRLM is shown below:

Like every other entry on the page, the post includes a clickable "**Read More**"

button.  When clicked, the reader is taken to the original source page, which in many

instances is Google's "Scholar" site where court rulings/orders are publicly available.



As reflected above, Google's Scholar page for the case in question does not

contain the full and complete text of the order in question.  Rather, like the IRLM page,

Google shows only a small portion or "snippet" of text from the case.  Therefore, just as

a visitor to Defendants' IRLM page must click the "Read More" link to view the entire

order, the same is true when visiting Google's Scholar page.  When a visitor clicks the

case title in Google Scholar, they are provided with a full-text copy of the referenced

order.  The same format is used for all posts on the IRLM page involving General Steel,

although in some cases the source is a different third party website, not Google.

Second, at or around the same time Defendants created the IRLM page, they

also began promoting the page via paid text advertisements on Google and

Bing/Yahoo!  Although the ads may appear when a person runs a search using General

Steel's name, none of these ads specifically mention General Steel by its full name.[1]
Rather, the ads typically contain generic language such as "*Don't Send Them A
Deposit*" or "*Steel Building \*Lawsuits\**", with a link clearly identifying Defendants'
website as the destination.

**Sample Ad**



General Steel alleges the cases on the IRLM page are presented in a false,
misleading, and defamatory manner because, *inter alia*, "The inflammatory and false
allegations selectively published by Defendants on the Industry Related Legal Matters
page were posted in a way where **an average reader** would, on balance, read them as
fact, as though proven in court before a judge and jury."  First Amended Complaint
("FAC"; ECF No. 49) ¶ 44 (emphasis added).  General Steel also alleges that at least
two of the paid Google advertisements are false or misleading in various ways.  *See*
FAC ¶ 16.

## SUMMARY OF CHALLENGED TESTIMONY

Against this backdrop and in an attempt to support its claims, General Steel has
disclosed an "Internet marketing" expert, Jason McDonald.  To date, Mr. McDonald has

---

[1] Although no ads use General Steel's full name, one ad mentions the *name* of one of
General Steel's customers—Rock Limo.  Another ad uses the word "General" when
attributing a quote from a court order to General Steel.

produced three separate expert reports dated December 30, 2014, February 25, 2015, and March 10, 2015, attached hereto as Exhibits A, B and C, respectively.

In his first report, Mr. McDonald offers certain opinions in response to the following four questions:

1.  Is Armstrong Steel systematically targeting navigational, branded and/or reputational search queries relating to General Steel?

    a.  If so, how, to what extent, and for how long?

    b.  On what search engines and websites do these ads appear?

    c.  What is the content of the ads?

    d.  What is/are the landing page(s) of click throughs via these ads?

2.  What is the possible impact on customer behavior of these ads?

3.  What are the possible impacts of these ads on attitudes towards General Steel?

4.  What damages are caused by the attack advertising?

With respect to the first question and its four subparts, Mr. McDonald does not appear to be expressing any expert opinions. Instead, he offers nothing more than descriptions on matters such as "the content of the ads".

As to questions two and three ("possible impact of customer behavior" and "possible impacts … on attitudes towards General Steel"), Mr. McDonald addresses them jointly. However, rather than offering opinions based on a reliable analysis of data, Mr. McDonald's discussion contains only unsupported conclusory assertions:

·   "Common sense will indicate that if a potential customer finds negative information on a vendor in a competitive marketplace with many potential suppliers, it is not logical for the consumer to spend his time doing extremely in-depth information [sic]."  Ex. A at 15;

·  "All evidence strongly points to a devastating negative impact of negative
   information, and the fact that potential customers generally do not reach
   out to the affected vendor for a rebuttal." *Id.* at 16;

·  "The combination of keywords, ad text, and landing page are, in sum, a
   deadly combination designed to create a "character assassination" of
   General Steel by Armstrong Steel, and one must conclude that the impact
   on General Steel's sales has been substantial." *Id.*

·  "In terms of the brand image of General Steel, one can also conclude that
   the attack campaign has had a very negative impact on its brand image
   because the mere accusation of improper conduct can substantially
   damage a brand even if the brand is exonerated after the fact." *Id.* at 17.

As to each of the above "opinions," aside from his own "common sense" and

logic, Mr. McDonald cites no facts, no data, no methodology, and no evidence to

support his views.  Similarly, in his discussion of question 4 ("What damages are

caused by the attack advertising?"), Mr. McDonald simply presents a bullet-point list of

topics such as "Substantial damage from lost sales" without <u>any</u> further explanation or

analysis.

## ARGUMENT

"Under Rule 702, a district court must satisfy itself that the proposed expert

testimony is both reliable and relevant, in that it will assist the trier of fact, before

permitting a jury to assess such testimony."  *U.S. v. Rodriguez-Felix*, 450 F.3d 1117,

1122-1123 (10th Cir. 2006); *see also Daubert,* 509 U.S. at 579, 589 (Rule 702 imposes

on a district court a gatekeeper obligation to "ensure that any and all scientific testimony

or evidence admitted is not only relevant, but reliable.") In determining whether expert

testimony is "both reliable and relevant," the district court is required to undertake a two-

step analysis. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

First, the court must determine whether the expert is qualified to render an opinion. *Id.*

Second, if the expert is sufficiently qualified, the court must determine whether the

expert's opinion is reliable under the principles set forth in *Daubert*.

As to all aspects of the challenged opinions, the proponent of expert testimony

bears the burden of showing that its proffered expert's testimony is admissible. *See*

*Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001). Mr.

McDonald is not qualified an expert on the subject of most of his opinions, and his

opinions do not meet the strict requirements of Rule 702

I.    **MCDONALD'S OPINIONS ARE INADMISSIBLE BECAUSE HE IS NOT
      QUALIFIED AS AN EXPERT ON TOPICS SUCH AS THE LIKELY BEHAVIOR
      OF AN AVERAGE STEEL BUILDING CUSTOMER**

As noted above, in topics 2–4 of his initial report dated December 30, 2014,

Mr. McDonald purports to opine on issues such as "What is the possible impact on

customer behavior of these ads?" and "What damages are caused by the attack

advertising?" This testimony is not admissible under Rule 702 because, *inter alia*, Mr.

McDonald is not an expert on these subjects. *See Warner v. Gross*, 776 F.3d 721, 733

(10th Cir. 2015) (explaining, "A district court 'generally must first determine whether the

expert is qualified by knowledge, skill, experience, training, or education to render an

opinion.'") (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct.

1167, 143 L.Ed.2d 238 (1999)).

According to his résumé, Mr. McDonald did not study or receive any formal

degrees in "consumer behavior," either in the steel building industry or any other

comparable market.  Nor did Mr. McDonald receive a degree in marketing or sociology or anything have to do with consumer behavior.  Rather, Mr. McDonald holds a Bachelor of Arts degree in Russian Studies and economics, which he earned in 1985, and a Ph.D. in political science, earned in 1992, but he has no specialized education relating to the subject of "consumer behavior".

Moreover, Mr. McDonald has no training or experience that would qualify him to express expert opinions on subjects such as: "What is the possible impact on customer behavior of these ads?" or "What are the possible impacts of these ads on attitudes towards General Steel?" or "What damages are caused by the attack advertising?" Although Mr. McDonald may have expertise in the general field of marketing, such generalized experience does not render his specific opinions admissible.  *See Ho v. Michelin N. Am., Inc.*, 520 F. App'x. 658, 663 (10th Cir. 2013) (affirming district court's order excluding testimony from expert with more than 40 years of experience in field because plaintiff "failed to tie [expert's] specific, testable opinions to anything other than 'generalized experience,' holding that 'proper fulfillment of the court's gatekeeping duty requires more than passing along the opinion of a generally qualified expert merely because of his credentials.'"); *see also U.S. v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (agreeing, witnesses relying primarily on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.") (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendment)).

General Steel bears the burden of showing that its expert opinions are admissible, and this includes establishing that Mr. McDonald is qualified to offer the opinions contained in his reports. There is no basis for concluding that Mr. McDonald's general experience in marketing qualifies him to express opinions on matters such as what impact the ads would have on average consumer behavior or what damages are caused by the advertising. Accordingly, the second, third and fourth opinions in Mr. McDonald's initial report should be excluded in their entirety. For the same reasons, the opinions contained in Mr. McDonald's second (Exhibit B) and third (Exhibit C) reports should be excluded.

**II.    MCDONALD'S OPINIONS FAIL TO MEET THE RELIABILITY REQUIREMENTS OF RULE 702**

Even assuming Mr. McDonald was sufficiently qualified as an expert, his lack of methodology or expert rigor and his general speculation render his opinions inadmissible. "[I]f the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology …." *U.S. v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

**A.    The Opinions Are Not Reliable Because They Are Not Based on Any Methodology and Merely Reflect Mr. McDonald's Ipse Dixit**

When faced with a challenge to expert testimony, the court must determine whether the disputed opinions are reliable. The methodology used to assess reliability includes (1) whether the proffered theory can and has been tested; (2) whether the expert's opinion has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific

community.  *See Daubert*, 509 U.S. at 593–94.  The court may also consider other

factors such as: "(1) whether the expert employed the same degree of intellectual rigor

in formulating the opinion as he or she would be expected to employ in his or her own

professional life; (2) whether the expert has unjustifiably extrapolated from an accepted

premise to an unfounded conclusion (or, whether the gap between the analytical data

and the opinion proffered is too large); and (3) whether the expert adequately accounted

for obvious alternative explanations."  *Benton v. Avedon Eng'g, Inc.*, No. 10-CV-01899-

RBJ-KLM, 2012 WL 3399367, at *4 (D. Colo. Aug. 15, 2012).

Reliability questions may concern the expert's data, method, or application of the

method to the data. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221-22 (10th Cir.

2003).  Based on these standards, "Under *Daubert*, any step that renders the expert's

analysis unreliable . . . renders the testimony inadmissible. This is true whether the step

completely changes a reliable methodology or merely misapplies that methodology."

*Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999).

As a corollary, when an expert's conclusion "simply does not follow from the

data, a district court is free to determine that an impermissible analytical gap exists

between premises and conclusion."  *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1121

(10th Cir. 2004) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *accord*

*Norris v. Baxter Healthcare*, 397 F.3d 878, 886 (10th Cir. 2005).  Although "[t]rained

experts commonly extrapolate from existing data," neither *Daubert* nor the Federal

Rules of Evidence "require[ ] a district court to admit opinion evidence which is

connected to existing data only by the *ipse dixit* of the expert." *Norris*, 397 F.3d at 886
(quoting *Joiner*, 522 U.S. at 146).

Here, the entirety of Mr. McDonald's second, third and fourth opinions in his
original report (Exhibit A) are based on nothing but his own *ipse dixit*.  For instance, Mr.
McDonald's third opinion purports to answer the question: "What are the possible
impacts of these ads on attitudes towards General Steel?"  Mr. McDonald answers this
question with various hypothetical comments about the potentially "devastating" impact
that negative internet posts can have in certain hypothetical cases, but he offers
absolutely no factual basis whatsoever for concluding that any such negative impact
has actually occurred in this case.

As reflected in his report, Mr. McDonald did not conduct any consumer surveys
which would reveal whether the ads in question have actually caused "devastating"
harm to General Steel, or whether the ads have largely been ignored or ineffective for
other reasons.  In addition, Mr. McDonald did not interview or speak with any actual or
potential steel building customers to ascertain how they interpreted the content on the
IRLM page.  On an even more basic level, Mr. McDonald failed to review or even
consider General Steel's own financial data which would have informed him that, in fact,
the company's sales were <u>increasing</u> during the same time period when Mr. McDonald
opined that the company was likely suffering "substantial damage" from lost sales.

Other than expressing the general (and obvious) conclusion that bad information
posted on the internet could have harmful effects, Mr. McDonald does not express any
scientific conclusions or rely on a generally accepted methodology regarding the extent

10

or amount of damage caused by Defendants' conduct (as opposed to harm caused by other sources).  Instead, Mr. McDonald merely opines that it is "highly likely" that "substantial" damage is being caused, but he offers no further explanation demonstrating that his conclusions could be tested in any objective way.  This testimony fails to meet *Daubert's* reliability requirement.  "Expert testimony must be based on a reliable methodology to be admissible … [F]actors that could be relevant to deciding the reliability of a scientific method or principle, includ[e] whether the method can be tested in some objective sense, its known or potential rate of error, any peer review or publication, and its general acceptance in the scientific community."  *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D.Colo. 2006).

Rather than pointing to evidence or data that shows that his opinions are correct and reliable, Mr. McDonald cites no facts or data that would support his opinion that General Steel has suffered "substantial" (or any) lost business as a result of the advertising in question.  *See SolidFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-CV-01468-WJM-BNB, 2014 WL 983507, at *5 (D. Colo. Mar. 13, 2014) ( "One aspect of reliability that the proponent of expert testimony must show is that the expert's opinion 'is based on sufficient facts and data', and this inquiry is qualitative, not quantitative." (citing *U.S. v. Lauder,* 409 F.3d 1254, 1264 n.5 (10th Cir. 2005)).

Again, the same is true as to Mr. McDonald's conclusory discussion of question 4 – "What damages are caused by the attack advertising?"  Rather than expressing an opinion based on his review of the evidence, Mr. McDonald offers nothing more than a bullet-point list of potential categories of harm with conclusory titles such as:

"Substantial damage from lost sales."  Ex. A at 17.  Beyond merely identifying the
possible types of harm which might have occurred, Mr. McDonald gives no explanation
or discussion of how the facts and evidence show that such harm actually occurred in
this case.  This unsupported testimony represents precisely the type of "analytical gap"
for which exclusion is appropriate.  *See Chimney Rock Pub. Power Dist. v. Tri-State
Generation & Transmission Ass'n, Inc.*, No. 10-CV-02349-WJM-KMT, 2014 WL
1715096, at *7 (D. Colo. Apr. 30, 2014) (finding "hyperbolic" statements from expert
supported by nothing more than the expert's personal experience properly excluded
where opinion was not based on analysis of any evidence or data); *A.R. by Pacetti v.
Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 12-CV-02197-
RM-KLM, 2013 WL 5463518, *9 (D. Colo. Sept. 30, 2013) (explaining, "Where proffered
expert testimony is not based on independent research, the party must come forward
with other objective, verifiable evidence that the testimony is based on "scientifically,
valid principles," e.g., peer review and publication) (quoting *Daubert v. Merrell–Dow
Pharms., Inc. ("Daubert II")*, 43 F.3d 1311, 1318 (9th Cir.1995))

    The lack of any meaningful analysis exists as to the second, third and fourth
opinions in Mr. McDonald's original report, as well as his second (Exhibit B) and third
(Exhibit C) reports.  These opinions are thus unreliable and inadmissible.

    **B.    McDonald's Opinions Are Unreliable Because They Fail To Account
            For Alternative Explanations**

    As noted above, among other factors the court must consider when performing
its reliability analysis is to ask "whether the expert adequately accounted for obvious
alternative explanations."  *Benton*, 2012 WL 3399367, at *4.  Here, Mr. McDonald's

doomsday prophecies regarding the likely harm caused by Defendants' campaign of

"character assassination" is not admissible because Mr. McDonald utterly failed to

explain, discuss, or even consider whether any harm suffered by General Steel was

caused by other factors, such as scathing criticism posted on websites such as

www.RipoffReport.com.

Attached hereto as Exhibit D are examples of more than two dozen complaints

currently posted on RipoffReport.com regarding General Steel bearing titles such as:

"General Steel Ripoff Fraud Lied Pressured Stole Unethical Criminal Dishonest"

(emphasis added). The harshness of these customer reviews far exceeds any content

published by Defendants. Despite this, and despite expressing a belief that Defendants'

conduct in this case has caused "Substantial damage to the reputation of General Steel,

with a movement of the perceived brand from positive or neutral to negative …," nothing

in Mr. McDonald's report explains how the harm caused by Defendants could be

meaningfully distinguished from harm caused by other factors such as the Ripoff Report

site, or similar complaints regarding General Steel. Mr. McDonald simply fails discuss

this point at all. As a result, it is evident that Mr. McDonald's second, third, and fourth

opinions in his original report are not reliable because he has failed account for other

obvious alternative explanations for the alleged harm suffered by General Steel.

### C.    Opinion Nos. 2, 3, and 4 Do Not Assist the Trier of Fact

Finally, Mr. McDonald says that his opinions and conclusions are based on

"common sense," and if that is the case, then the jury can apply their own common

sense without help from a paid expert. "There is no more certain test for determining

when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *U.S. v. Rice*, 52 F.3d 843, 847 (10th Cir. 1995).

Here, a jury of reasonably intelligent people does not need an expert to tell them that negative information <u>may</u> have a negative impact on a company. As Mr. McDonald states, this is common sense. Beyond this simple conclusion which a jury is free to reach or reject on their own, Mr. McDonald's opinion does not assist the trier of fact and is therefore not admissible. *See U.S. v. Garcia*, 994 F.2d 1499, 1506 (10th Cir. 1993) (holding where specialized knowledge is not required to make a fact determination, expert testimony is inadmissible under Rule 702); *see also Heineman v. Am. Home Prods. Corp.*, 2015 WL 1186777, at *3 (D.Colo. 2015) (agreeing, "An expert opinion that simply 'compar[es] a [defendant's] actions to the industry standard' may be excluded where 'the jury was fully capable of deciding this [issue] without expert testimony.'").

## III.    CONCLUSION

For all of the foregoing reasons, the Court should grant Defendants' Rule 702 motion to exclude opinions and testimony of Plaintiff's expert Jason McDonald.

Dated: March 31, 2015                    Respectfully submitted,


                                         *s/ Craig R. May*
                                         Hugh Q. Gottschalk (#8525)
                                         Craig R. May (#32267)
                                         Kenneth E. Stalzer  (#42896)
                                         Wheeler Trigg O'Donnell LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO 80202-5647
                                         Telephone:  303.244.1800
                                         Facsimile:  303.244.1879
                                         Email:   gottschalk@wtotrial.com
                                                   may@wtotrial.com
                                                   stalzer@wtotrial.com

                                         David S. Gingras
                                         Gingras Law Office, PLLC
                                         4802 E. Ray Road, #23-271
                                         Phoenix, AZ 85044
                                         Telephone:  480.264.1400
                                         Facsimile:  480.248.3196
                                         Email:   david@gingraslaw.com

                                         Attorneys for Defendants, Ethan Daniel
                                         Chumley and Atlantic Building Systems, LLC

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on March 31, 2015, I electronically filed the foregoing **DEFENDANTS' FED. R. EVID. 702 MOTION TO EXCLUDE EXPERT TESTIMONY OF MR. JASON McDONALD** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**David Samuel Fein**
david.fein@embsgroup.com, patrick.f@embsgroup.com,
adam.walczak@embsgroup.com

**Patrick Donald Frye**
patrick.f@embsgroup.com, adam.walczak@embsgroup.com

**Adam Ross Bialek**, adam.bialek@wilsonelser.com

**Henry L. Solano**, henry.solano@wilsonelser.com,
laura.devico@wilsonelser.com

**Laura Adriana Alos**, laura.alos@wilsonelser.com

**David Scott Gingras**
david@gingraslaw.com, jane@gingraslaw.com

**Hugh Q. Gottschalk**
gottschalk@wtotrial.com, gottesfeld@wtotrial.com, egan@wtotrial.com

**Craig Ruvel May**
may@wtotrial.com, ganderson@wtotrial.com, shaw@wtotrial.com,
winiarski@wtotrial.com

**Kenneth Edward Stalzer**
stalzer@wtotrial.com, sohn@wtotrial.com


s/ Craig R. May