**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-01932-REB-CBS

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

       Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually; and ATLANTIC BUILDING SYSTEMS, LLC, a
Delaware corporation, doing business as ARMSTRONG STEEL CORPORATION.

       Defendants.

---

## FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

a.    A Final Pretrial Conference was held on August 7, 2015 at 10:30 a.m.

b.    <u>Counsel for Plaintiffs</u>:

       David Fein
       Patrick Frye
       Building Services Group, LLC
       10639 Bradford Road
       Littleton, CO 80127

c.    <u>Counsel for Defendants</u>:

       Craig May
       Kenneth Stalzer
       Wheeler Trigg O'Donnell LLP
       370 17th St., Suite 4500
       Denver, CO 80202

       David Gingras
       Gingras Law Office, PLLC
       4802 E. Ray Road, #23-271
       Phoenix, AZ 85044

## 2.  JURISDICTION

This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1338(a) and (b), 1331, 15 U.S.C. 1121(a), and 28 U.S.C. § 1367(a).

## 3.  CLAIMS AND DEFENSES

Plaintiff's Claims

Plaintiff General Steel sells pre-engineered steel buildings throughout the world. General Steel has been in business in Colorado since 1995, and has sold many thousands of steel buildings and has spent tens of millions of dollars on its advertising and marketing.  Plaintiff claims that Defendants have intentionally focused their marketing efforts on false advertising about General Steel and on diminishing General Steel's reputation in the business community, and on destroying General Steel's business and taking business from General Steel.  Defendant Ethan Chumley worked for General Steel ten years ago and was fired.  Since his firing, Ethan Chumley has been on a vendetta to harm General Steel and its owner, Jeffrey Knight.  Plaintiff claims that Defendants have a history of illegal and malicious acts targeting General Steel. This history of illegal and malicious acts is significant to this case for several reasons, including that intentional false advertising provides an important presumption of consumer deception; malice goes to evidence for exemplary damages and willfulness under the Lanham Act. Still further, the historical illegal and malicious acts targeting General Steel are admissible evidence under FRE 404(b). Plaintiff claims that the manner in which Defendants have published and publicized bits and pieces of old and unproven lawsuits is both defamatory and false.    Plaintiff claims that the ads used to promote Defendants' "Industry Related Legal Matters" website are false and misleading. Plaintiff seeks damages, equitable remedies including an injunction and disgorgement

of Defendants' profits, and attorney's fees.

Defendants' Defenses

The Industry Related Legal Matters webpage on the Armstrong Steel website does nothing more than list and provide links to lawsuit filings and articles from elsewhere on the internet regarding pre-engineered steel-building companies, including General Steel. There is nothing false about the page or about the ads that customers can click to access that page. It is not disputed that General Steel has been involved in a significant amount of litigation, including the matters on the page and more - the page does not include all litigation involving General Steel. General Steel does not want the public to know about any of these matters. But there is no prohibition against publishing negative information about a competitor. Defendants deny that their conduct constitutes false advertising, defamation, tortious interference, or a conspiracy. Plaintiff may not like it, but the law protects Defendants' right to republish the challenged information and to advertise as Armstrong has done.  General Steel uses its litigation as both a sword and shield against customers, competitors, and even the government - as evidenced by the information on the IRLM page. Apparently believing that the best defense is a good offense, Plaintiff focuses on attacking Armstrong and Mr. Chumley instead of showing how the challenged advertising is false. This case is about the truth or falsity of information on the web page, not about Mr. Chumley. Plaintiff has identified the advertisements they claim are false, misleading, or defamatory in its attachment to jury instruction Comp-P-11 (ECF No. 147; ECF No. 155 (amended exhibit, July 30, 2015).

**Elements of Claims**

The parties agree that Colorado law applies to the state-law claims.

1.  <u>False advertising - violation of Lanham Act, 15 U.S.C. § 1125(a)</u>.  Plaintiff

    must prove by a preponderance of the evidence that:

    a.  Defendants have made false or misleading representations of fact in their

        commercial advertising.

    b.  The misrepresentations are material, in that they are likely to influence the

        purchasing decision.

    c.  The misrepresentations actually deceive or have the tendency to deceive

        a substantial segment of the audience.

    d.  The Defendants have placed the false or misleading statements in

        interstate commerce in connection with the sale of their goods or services

        and,

    e.  The Plaintiff has been or is likely to be injured as a result of the

    misrepresentation.

2.  <u>Defamation - Libel per quod</u>. Plaintiff must prove by a preponderance of the

    evidence:[1]

---

[1] Defendants contend that Plaintiff's libel claim, whether per se or per quod, is based on statements that pertain to a matter of public interest or general concern. *See Gen. Steel Domestic Sales, LLC v. Steel Wise, LLC*, No. CIV.A. 07-CV-01145-D, 2009 WL 185614, at *8 (D. Colo. Jan. 23, 2009) (further noting, "[N]on-compliance with consumer protection statutes is significant matter of public concern…" and agreeing, "Factual testimony about events which happened prior to the customer receiving formal notice of the lawsuit and the opportunity file a claim <u>should not be hidden from the public or the court in a case where the underlying conduct of General Steel</u>, to a certain extent, has been tried in open court and found to be 'offensive' to consumer protection statutes.") (emphasis added). Plaintiff disputes this. If the Court finds that the statements contain matters of public concern, Plaintiff bears the burden of proving by clear and convincing evidence the statements are false, Defendants knew or recklessly disregarded that the statements are false, and are about Plaintiff. CJI-Civ. 22:1, 22:2.  In addition, Defendants contend that the Court must determine as a matter of law whether the statements are per se or per quod and whether they pertain to a matter of public interest or general concern. CJI-Civ. 22:1 cmts. 15 & 21.  Plaintiff objects that on 7-31-15 at 12:53 p.m., the day this Final Pretrial Order submission was due to be submitted to the Court, Defendants provided Plaintiff with a revised Final Pretrial Order draft

    a. The defendants published or caused to be published any of the statements (identified in the Attachment to the libel jury instruction and included as Exhibit 1 hereto);

    b. The statement was defamatory;

    c. The statement was about the plaintiff; and

    d. The publication of the statement caused special damages to the plaintiff.

3. <u>Intentional interference with prospective business advantage</u>.  Plaintiff must prove by a preponderance of the evidence:

    a. The defendants caused a third person not to enter into a contract with General Steel, or prevented a third person from entering into a contract with General Steel;

    b. The Defendants did so intentionally;

    c. Defendants used improper means to do so; and

    d. The defendants' interference caused the plaintiff damages.

4. <u>Civil conspiracy</u>.  Plaintiff must prove by a preponderance of the evidence:

    a. The defendants and at least one other person agreed, by words or conduct, to accomplish an unlawful goal or accomplish a goal through unlawful means;

    b. One or more unlawful acts were performed to accomplish the goal;

    c. The plaintiff had damages; and

    d. The plaintiff's damages were caused by the acts performed to accomplish

---

which substantially added extensive footnotes and legal citations to this document (essentially briefing their defenses anew) to the prejudice of Plaintiff.  Defendants' 11th hour briefing of their case through their new footnote additions and extensive citations is not proper.  Plaintiff first circulated the draft Final Pretrial Order document to Defendants on Monday morning, 7-27-15, over four days ago.

the goal.

## DEFENSE - PLAINTIFF CANNOT PROVE EVERY ELEMENT OF EVERY ONE OF ITS CLAIMS

Defendants contend that Plaintiff will be unable to meet its burden of proving every element for every one of its claims.

## DEFENSE - COMMUNICATIONS DECENCY ACT IMMUNITY

Defendants contend that the question of whether they are entitled to immunity under the Communications Decency Act, 47 U.S.C. § 230(c)(1) (the "CDA"), is based on facts which are undisputed, and therefore the immunity claim should be resolved by the Court as a matter of law.  However, to the extent the Court finds that any disputed facts exist which must be resolved by the jury prior to the application of the CDA, then the following standards apply:

1. Plaintiff[2] must prove by a preponderance of the evidence that the following three elements do <u>not</u> apply to Defendants:

    a. The Defendants are either a provider or user of a website;

---

[2] Plaintiff is unaware of any authority placing this burden on it, rather than Defendants.  Plaintiff's position is that Defendants have claimed this defense as an "absolute privilege" in their summary judgment papers; the burden of proof for absolute privilege entitlement rests with the party asserting the privilege.  *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982).  Plaintiff incorporates herein its Response in Opposition to Defendants' Motion for Summary Judgment, ECF No. 123 and its Brief in Support of Proposed Jury Instructions, ECF No. 148.

Defendant's position is that to the extent they have the initial burden of demonstrating the applicability of the CDA, that burden has been met for the reasons explained in Defendants' Motion for Summary Judgment (ECF No. 106).  As such, the burden shifts to Plaintiff to prove facts which negate or rebut immunity.  *See Asia Economic Institute, LLC v. Xcentric Ventures, LLC*, 2011 WL 2469822, *3 n.6 (C.D.Cal. 2011) (finding summary judgment based on CDA proper where plaintiff failed to prove facts sufficient to negate immunity; "Defendants have declared that they did not create the reports, <u>*and Plaintiffs have not come forward with any evidence rebutting that assertion.*</u>") (emphasis added); *GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173 (N.D.Tex. 2009) (CDA found to apply because plaintiff failed to offer evidence sufficient to rebut immunity).  Because Plaintiff has offered no evidence of any facts which would negate immunity, Defendants are entitled to immunity as a matter of law.  However, if there was conflicting evidence on such facts, Plaintiff would bear the burden of proof on those facts.

b.  The Plaintiff's claims require treating the Defendants as a publisher or

speaker of information; and

c.  The allegedly actionable material was published on the internet by

someone other than Defendants.[3]

AFFIRMATIVE DEFENSE-PRIVILEGE TO REPORT ON OFFICIAL PROCEEDINGS

2.  Defendants must prove by a preponderance of the evidence that

a.  The Defendants were reporting about a legal or court filing; and

b.  The report was substantially accurate and complete as to the matter

being reported, or it was a fair summary of the matter.[4]

---

[3] Plaintiff contends that the defense does not apply, because CDA immunity is not available unless the information at issue was provided to a defendant by another information content provider.  *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1195-1196 (10th Cir. 2009).  In addition, because defendants wholly or partially created or developed the content, there is no CDA immunity.  *Accusearch,* 570 F.3d at 1197. Defendants were "more than a neutral conduit" for the information.  *Id.* Plaintiff incorporates herein its Response in Opposition to Defendants' Motion for Summary Judgment, ECF No. 123 and its Brief in Support of Proposed Jury Instructions, ECF No. 148.

Defendants' position is that Plaintiff's assertions misrepresent the law in multiple ways.  First, the CDA applies regardless of whether the original author of online content provided material directly to the defendant or to another person. *See Vazquez v. Buhl*, 150 Conn. App. 117, 129–133 (Conn. App. 2014) (explaining "provided by" means any content posted anywhere online by a third party, regardless of whether it was ever provided to the defendant); *DiMeo v. Max*, 433 F.Supp.2d 523, 529–30 (E.D.Pa. 2006) ("there is no relevant distinction between a user who knowingly allows content to be posted to a website he … controls and a user who takes affirmative steps to republish another person's content; CDA immunity applies to both.")  Second, Plaintiff has offered no evidence that Defendants created any of the substantive text contained in the 37 individual entries/posts on their Industry Related Legal Matters page. Third, Plaintiff's only basis for arguing that Defendants "developed" such content is based on protected conduct such as choosing which material to publish and trimming that content for length, neither of which constitute development as a matter of law. *See Jones v. Dirty World Ent. Recordings, LLC*, 755 F.3d 398, 411–12 (6th Cir. 2014) (explaining loss of CDA immunity requires showing that defendant made a "material contribution" to unlawful nature of third party content, and explaining, "an editor's changes to the length and spelling of third-party content do not contribute to the libelousness of the message."); *see also Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) (holding, "A website operator who edits user-created content-such as by correcting spelling, removing obscenity or trimming for length-retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality."). *See generally* Defendants' Brief on Competing and Nonstipulated Jury Instructions at 8, 18-21, ECF No. 150.

[4] Plaintiff disputes the availability of this defense, because Defendants' statements are not "fair and substantially correct." *Quigley v. Rosenthal*, 327 F.3d 1044, 1062 (10th Cir. 2003).  Colorado applies the Restatement (Second) of Torts as to this common-law privilege.  *Id.* The Restatement reflects that

AFFIRMATIVE DEFENSE - INCREMENTAL HARM[5]

    3. Defendants must prove by a preponderance of the evidence that

        a. When a defendant publishes several different harmful statements about

the Plaintiff, and some of those statements are false and some are true,

whether publication of the truthful statements caused equal or greater

harm than the false statements;

AFFIRMATIVE DEFENSE - CIRCUMSTANCES THAT MITIGATE DAMAGES

    4.  If you find that Plaintiff is entitled to recover damages from Defendants on

Plaintiff's defamation claim, then in determining those damages, you must take into

---

"Abuse of the privilege takes place [] when the publisher does not give a fair and accurate report of the proceeding." *Rest. 2d Torts* § 611.

    Defendants' position is that Plaintiff's conclusory assertions misrepresent the law. First, the application of the fair report privilege is a question of law for the Court. *Quigley v. Rosenthal*, 327 F.3d 1044, 1062 (10th Cir. 2003) (citing *Hoffler v. State Personnel Bd.*, 7 P.3d 989, 990 (Colo. App.1999) (indicating that the determination of a privilege, such as the fair report privilege, is a question of law). Second, *Quigley* referred to a situation which is not applicable here—i.e., where the defendant publishes defamatory content based solely on the filing of a Complaint "before any judicial action has been taken …" on the Complaint. Third, Plaintiff continues to wrongly suggest that the fair report privilege requires a party to publish every part of the entire case, as opposed to discussing discrete parts. This is incorrect as a matter of law. *See* Restatement (Second) of Torts § 611 (explaining the test is whether a "report is [an] accurate and complete or a fair abridgement *of the occurrence reported*.") (emphasis added); *see also Rosenberg v. Helinski*, 328 Md. 664, 682, 616 A.2d 866, 874–75 (Md. App. 1992) (discussing Restatement § 611, compiling numerous cases, and rejecting argument that fair reporting privilege requires defendant to publish every detail about a case; "The fair reporting privilege reaches not only comprehensive accounts of judicial proceedings, but [also] accounts focusing more narrowly on important parts of such proceedings.")

    [5] Plaintiff contends that the Tenth Circuit has rejected that Colorado law supports the "incremental harm" doctrine. *Bustos v. A&E TV Networks*, 646 F.3d 762, 764-769 (10th Cir. Colo. 2011)(rejecting the incremental harm doctrine and finding that under Colorado law, the material falsehood requirement for a defamation claim serves the same screening function as incremental harm. In rejecting the incremental harm doctrine, the Tenth Circuit discussed the problems that the doctrine creates. The court also recognized that the doctrine applies to other parts of the same publication – not unrelated statements).

    Defendants' position is that once again, Plaintiff misrepresents the law. Contrary to Plaintiff's position, *Bustos* does not support its position that Colorado has rejected the incremental harm doctrine; the case simply says no such thing. On the contrary, Colorado has expressly adopted the incremental harm doctrine. *See Tonnessen v. Denver Pub. Co.*, 5 P.3d 959 (Colo. App. 2000) (discussing and adopting incremental harm doctrine); *see also* CJI-CIV 22:6 (2015) (explaining, "An instruction should be given in cases in which the publication containing the statements in issue contains other statements which the jury could reasonably determine to be as harmful as those for which liability has been found.").

account any of the following factors that have been proved by a preponderance of the evidence:

      a. Whether the Plaintiff's damages were caused, in part, by third persons who published on the same subject, before or about the same time as the defendant published;

      b. Whether the Defendants clarified the statement(s) with reasonable promptness and fairness.

AFFIRMATIVE DEFENSE - BUSINESS COMPETITION PRIVILEGE[6]

    5.  If you find that the Plaintiff has proved all the elements of its intentional interference with prospective business advantage claim by a preponderance of the evidence, then you must consider Defendants' affirmative defense of the business competition privilege. Defendants have the burden of proving the following elements by a preponderance of the evidence:

      a. The relation (i.e., the acquiring of a potential customer) concerns a matter involved in the business competition between Defendants and the Plaintiff; and

      b. The Defendants did not employ wrongful means (such as physical violence, fraud, or civil or criminal prosecution); and

---

[6] Plaintiff contends that this defense was not averred, and so has been waived. *Zimmer Spine, Inc. v. EBI, LLC*, 2011 U.S. Dist. LEXIS 103629, *14-17, 2011 WL 4089535 (D. Colo. Sept. 14, 2011) ("[u]nder Colorado law, the competitor's privilege is not an element of plaintiff's claim, but an affirmative defense that must be <u>asserted and</u> proven by the defendant.")

Defendants reserved the right to assert "all other affirmative defenses . . . that investigation, discovery, or trial may reveal to be applicable." (Defs.' Answer to Am. Compl at 25, ECF No. 57, Feb. 17, 2015.) To the extent Defendants would need leave to amend to assert this defense, Courts in the Tenth Circuit have noted that district courts should be liberal in granting amendments at any stage, even at trial or after entry of judgment *Triplett v. Leflore County, Okl.,* 712 F.2d 444, 446 (10th Cir.1983); *Geringer v. Wildhorn Ranch, Inc.*, 706 F. Supp. 1442, 1447 (D. Colo. 1988). Plaintiffs would not be prejudiced by the inclusion of this affirmative defense because the key element in either Plaintiff's affirmative claim or Defendant's affirmative defense remains the same—whether Defendant used improper means to interfere. Plaintiff disputes this.

c. Defendants' action does not create or continue an unlawful restraint of trade; and

d. Defendants' purpose is at least in part to advance their interest in competing with the Plaintiff.

## 4.  STIPULATIONS

1.  General Steel has been selling buildings for 20 years.

2.  Armstrong Steel has been selling buildings for six years.

3.  The Armstrong Steel website contains the Industry Related Legal Matters webpage.

4.  Armstrong Steel placed the following paid advertisements on the Internet:

   **Advertisement 1**:

   **Don't Send Them A Deposit - ArmstrongSteelBuildings.com**
   **Ad www.armstrongsteelbuildings.com/**
   **Until You've Seen These Lawsuits. Read This Before It's Too Late!**

   **Advertisement 2**:
   **Before You Send a Deposit - Do Your Research First**
   **Ad www.armstrongsteelbuildings.com/ (855) 882-6555**
   **Read This Before It's Too Late!**
   **View Gallery - Virtual Building - Design It Online - 1.800.345.4610**

   **Advertisement 3**:
   **Steel Building *Lawsuits* - ArmstrongSteelBuildings.com**
   www.armstrongsteelbuildings.com/ +1 800-345-4610
   4.8  rating for armstrongsteelbuildings.com
   **Rock Limo Lost $125,383 in Deposits *Beware* Research Before You Buy!**
   **Court Rulings · Lawsuits · Buyer Beware · Complaints**

   **Advertisement 4**:

   **Don't Send Them A Deposit - Until You've Seen These Lawsuits.**
   www.ArmstrongSteelBuildings.com
   Until You've Seen These Lawsuits. Read This Before It's Too Late!

**Advertisement 5**:
**Consumer ALERT! - Have You Seen These Customer Complaints?**
www.ArmstrongSteelBuildings.com
Have You Seen These Customer Complaints? Read This Before Its Too Late!

**Advertisement 6**:
**Read Customer *LAWSUITS***
www.armstrongsteelbuildings.com/ +1 800-345-4610
4.7 rating for armstrongsteelbuildings.com
**"General Told Her 'We Will Keep You In Court Until We Break You' "**
**Court Rulings · Lawsuits · Buyer Beware · Complaints**

5. When clicked, those advertisements direct potential customers to the Industry Related Legal Matters webpage of the Armstrong website.

6. The Industry Related Legal Matters webpage and Armstrong's paid Internet advertisements are advertising in interstate commerce.

7. "Armstrong2014_790" through "Armstrong2014_1017" are email communications with Armstrong Steel's customers or potential customers that were visitors to Armstrong Steel's Industry Related Legal Matters webpage.

8. The document Armstrong2014_1018 reflects that 21,090 IP addresses were logged via the pardot tracking cookie on Armstrong Steel's Industry Related Legal Matters webpage.

9. "Armstrong2014_1019" through "Armstrong2014_2866" are Armstrong's customer relations database documents related to Armstrong Steel's customers or potential customers that were visitors to Armstrong Steel's Industry Related Legal Matters webpage.

10. "Armstrong2014_2867" through "Armstrong2014_2952" are Armstrong Steel's contract documents related to Armstrong Steel's customers or potential customers that were visitors to Armstrong Steel's Industry Related Legal Matters webpage.

11.     "Armstrong2014_2953" through "Armstrong2014_3164" are Armstrong Steel's contract proposal documents related to Armstrong Steel's customers or potential customers that were visitors to Armstrong Steel's Industry Related Legal Matters webpage.

12.     "Armstrong2014_3165" through "Armstrong2014_3983" and "Armstrong2014_3985" through "Armstrong2014_4027" show all of Armstrong Steel's internet advertising and marketing expenditures from January 1, 2014 through April 14, 2015.

## 5.  PENDING MOTIONS

1.  Plaintiff's Motion to Strike the Testimony and Opinions of Jonathan E. Hochman Under Fed. R. Evid. 702 (CM-ECF # 82, 87, 97, 98, 99) filed 3/31/15

Defendants' Response (CM-ECF #113) filed 4/24/15

Reply (CM-ECF #122) filed 5/11/15

2.  Defendants' Fed. R. Evid. 702 Motion to Exclude Expert Opinions of Plaintiff's Damages Expert Gregory B. Taylor (CM-ECF #83, 84, 88) filed 3/31/15

Plaintiff's Response (CM-ECF #110, 111) filed 4/24/15

Reply (CM-ECF #126) filed 5/11/15

3.  Defendants' Fed. R. Evid. 702 Motion to Exclude Expert Testimony of Mr. Jason McDonald (CM-ECF #85, 86, 89, 90) filed 3/31/15

Plaintiff's Response (CM-ECF #112) filed 4/24/15

Reply (CM-ECF #121) filed 5/11/15

4.  Defendants' Motion for Summary Judgment (CM-ECF #106) filed 4/17/15

Plaintiff's Response (CM-ECF #123, 124) filed 5/11/15

Reply (CM-ECF #129) filed 5/28/15

5.   Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment (CM-ECF #107) filed 4/17/15

Plaintiff's Response  (CM-ECF #125) filed 5/11/15

Reply (CM-ECF #130) filed 5/28/15

6.   Plaintiff's Motion for Ruling on Admissibility of Judicial Notice of, and Application of Issue Preclusion as to Findings of Fact and Conclusions of Law in 10-cv-01398 (CM-ECF #133) filed 6/26/15

Defendants' Response (ECF #139) filed 07/20/15

Reply due 08/06/15

7.   Plaintiff's Motion to Strike Defendants' Witnesses, (ECF #154) filed 07/30/15.

## 6. WITNESSES

a.  List the nonexpert witnesses to be called by each party.  List separately:

(1)        Witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

<u>Plaintiff's Witnesses who will be present at trial</u>:

a.      Jeffrey Knight - will testify about all case issues.

b.      Travis McCain - General Steel marketing manager will testify about case issues including the harm caused by the IRLM attack campaign; and General Steel's efforts to mitigate the harm caused by the IRLM attack campaign; and his work in furtherance of General Steel's internet advertising.[7]

---

[7] Defendants object to Mr. McCain testifying about damages issues, as he was not disclosed as a witness on this subject matter under Rule 26(a), was not mentioned in Plaintiff's damages disclosures (which referred to expert witnesses) and was not listed an as expert.

      c.      Ethan Chumley (adverse witness) - all case issues.

Witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A)); and

Plaintiff's Witnesses who may be present at trial if the need arises:

      a.      Jan Eric Beavers (adverse)- may testify about all case issues.

      b.      Tami Giuffrida. Impeachment witness.

      c.      Bennett Hietbrink.  Impeachment witness.

      d.      Karl Hatfield.  Impeachment witness.

      e.      Jered Baldwin. Impeachment witness.

      f.      Ted Zounis.  Impeachment witness.

      g.      Mark Bertrand. Impeachment witness.

      h.      Any other witnesses necessary for rebuttal or impeachment.

Defendants' Witnesses who may be present at trial if the need arises:

      a. Ethan Chumley - Mr. Chumley created the IRLM page and will testify about the IRLM page, Armstrong's advertising that links to the IRLM page, the limited sales  Armstrong made from leads who viewed the IRLM page, the amount Armstrong has spent on advertising for the IRLM page, the lack of profit Armstrong realized from the page, and how the leads, sales, and advertising expenditures related to the IRLM page are a tiny fraction of Armstrong's overall leads, sales, and expenditures. He may also testify regarding information that is publicly available regarding General Steel's litigation, Armstrong's history and background, provide foundational evidence for exhibits. He may also offer testimony to rebut, impeach, or address evidence raised in Plaintiff's case.

b. Paul Grant - 1801 Broadway, Suite 1100 Denver, CO 80202. Mr. Grant was an attorney representing parties involved in some matters that are posted on the IRLM page, and will testify about those matters. He will also testify regarding his lack of involvement with or contact with or assistance to Defendants regarding the creation or marketing of the IRLM page and the absence of any evidence of any alleged conspiracy. He may also provide foundational testimony for exhibits. He may also offer testimony for any impeachment purposes.

c. Darold Killmer - 1543 Champa St., Suite 400, Denver, CO 80202. Mr. Kilmer represented Sandra Simmons in the Simmons v. General Steel matter that is posted on the IRLM page, and will provide foundational testimony for the exhibits about that case. He may also testify about that matter. He may also offer testimony for any impeachment purposes.

d. Jeffrey Knight (adverse) - Mr. Knight is expected to provide testimony regarding the challenged advertisements, other entries on the IRLM page that are not challenged, the litigation and disputes involving General Steel that are listed on the IRLM page, litigation involving General Steel that is not listed on the IRLM page, and General Steel's alleged damages.

e. Greg Rodriguez - 1616 N. Prospect St. Colorado Springs, CO 80907. Mr. Rodriguez may provide foundational testimony about his experience with General Steel and his participation in the Colorado Attorney General's case against General Steel and how General Steel told him it would keep him in litigation until it broke him; this testimony is referenced in the 2004 Order by Judge Jackson that is listed on the IRLM page and also is mentioned in one of the challenged pay-per-click ads.

f. Moses Garswa Matally - Pastor, Church for All, 400 E. 4th St.,
Owensboro, KY 42303, 270-688-8232. Mr. Matally is the author of the blog posting that
appears on the IRLM page entitled, "General Steel and Bernard Madoff: Business
Ethics in Reverse." Pastor Matally may provide foundational testimony about this blog
article and a letter he wrote to General Steel, which is also marked as a defense exhibit.
He may also testify regarding the experiences he had in dealing with General Steel
when his church was attempting to buy a building from it, as stated in the blog article.

g. Charlie Moore, Deacon Board of Rising Sun Missionary Baptist Church.
Mr. Moore would testify regarding the lawsuit and allegations made by the Rising Sun
Missionary Baptist Church in its lawsuit against General Steel, which is included in the
IRLM page, and he also may provide foundational evidence for the exhibits related to
that litigation. He may also offer testimony for any impeachment purposes.

h. Pastor James Brooks, Rising Sun Missionary Baptist Church. Pastor
Brooks would testify regarding the lawsuit and allegations made by the Rising Sun
Missionary Baptist Church in its lawsuit against General Steel, which is included in the
IRLM page, and he also may provide foundational evidence for the exhibits related to
that litigation. He may also offer testimony for any impeachment purposes.

i. Tim Crace, Bison Constructors. Mr. Crace would testify regarding the
allegations in the case brought by Fisher, Bison Constructors and Mark Yankowec
against General Steel, which is included in the IRLM page, and he also may provide
foundational evidence for the exhibits related to that litigation. He may also offer
testimony for any impeachment purposes.

j. Randy Childers, Texas Echo Land and Cattle. Mr. Childers would testify
regarding his company's sales transactions and litigation with General Steel and for any

impeachment purposes.

k. Harry Baumann, Owner Bajaba LLC d/b/a New Haven Golf Club. Mr. Baumann would testify regarding his company's sales transactions and litigation with General Steel and for any impeachment purposes.

l. Cathy Holland, Armstrong Employee c/o Wheeler Trigg O'Donnell. Impeachment witness as to any testimony or evidence from Tami Giuffrida.

m. Elisa Chavez, Armstrong Employee c/o Wheeler Trigg O'Donnell. Impeachment witness as to any testimony or evidence from Tami Giuffrida.

n. Shon Cochran, Armstrong Employee c/o Wheeler Trigg O'Donnell. Impeachment witness as to any testimony or evidence from Tami Giuffrida

o. Any witness necessary for rebuttal or impeachment purposes.

p. Any witness necessary for foundation purposes.

q. Any witness listed by Plaintiff.

(2)      Witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

Plaintiff

Deposition Testimony of Jonathan Hochman (if Mr. Hochman does not appear at trial)

b.  List the expert witnesses to be called by each party.  List separately:

(1)    witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

Plaintiff's Expert Witnesses who will be present at trial:

a.  Jason McDonald.  Mr. McDonald is an expert on internet advertising and

will testify consistent with his expert reports in this case.

    b.  Greg Taylor.  Mr. Taylor is a forensic accountant/CPA and will testify regarding General Steel's damages and Armstrong's profits for disgorgement consistent with his expert reports in this case.

(2)    witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

Defendants' Expert Witnesses who may be present at trial:

    a. Jonathan Hochman. Mr. Hochman is an internet expert and will    testify consistent with his expert reports in this case.

    b. Jon Ahern. Mr. Ahern is an accountant/CPA and will testify    consistent with his rebuttal reports to Mr. Taylor's reports in this case.

and

(3)    witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

## 7.  EXHIBITS

The Parties will submit one Joint Exhibit List on the form required by the Court at the outset of the conference.

## 8.  DISCOVERY

Discovery has been completed.

## 9.  SPECIAL ISSUES

1.  The Court's determination as a matter of law of the application of the Communications Decency Act (CDA) to immunize Defendants against liability for all of Plaintiff's claims, and whether there is any question on the CDA's application for the jury.

2.   Whether the parties could submit findings of fact and conclusions of law after trial, to see what evidence is presented at trial.

3.   Whether the issue of the applicability or not of the fair reporting privilege is a question of law that must be decided by the Court and not the jury.

4.   The Court's determination as a matter of law of whether the alleged defamatory statements are statements that pertain to a matter of public interest or general concern.

5.   Plaintiff - Whether Defendants' posting of particular pleadings from old lawsuits in which General Steel was a party permits Defendants' to conduct mini-trials into each separate underlying lawsuit.  That would entail 24 mini-trials possibly because Chumley has posted pleadings from 24 old lawsuits in which Plaintiff was a Defendant. Chumley has listed some 112 pleadings and orders from these old lawsuits as his proposed trial exhibits.  What is at issue in this case is only the misleading nature of what Chumley posted on his IRLM website and his advertising of same, and Chumley's history of illegal and/or malicious acts targeting General Steel.

6.   Plaintiff - Whether Defendants can introduce evidence (800 pages of records from the Denver Better Business Bureau) of some 79 customer complaints made against General Steel, most of which were caused by Defendants' own fake AG calls and fake consumer letters sent to General Steel's customers, which is the subject of 13 cv 00769 MSK-KAT.  These complaints have all been resolved and inquiry into these matters could consume days of trial time alone.

7.   Defendant - The Court's determination as a matter of law of whether the alleged defamatory statements are per se or per quod.

8.   Defendant - The Court's preclusion of Plaintiff introducing evidence regarding

Defendants' total income from the jury because it is not allowed for purposes of punitive damages, Colo. Rev. Stat. § 13-21-102(6), and any relevance to the Lanham Act is for the equitable remedy of disgorgement, which is a matter for the Court to decide.

9.     Defendant - Whether the Court should exclude the Brimmer Opinion and other evidence of prior unrelated acts under Rules 401-03, 404(b), and 802 because that evidence is irrelevant because it does not relate to the Industry Related Legal Matters page or advertising that links to that page;  even if it was relevant, its probative value is outweighed by countervailing factors such as unfair prejudice, confusing the issues or misleading the jury as none of that evidence has anything to do with the issues in this case; is inadmissible character evidence; and is hearsay.

10.     Defendant - General Steel's listing of Travis McCain to testify about harm to General Steel based on the IRLM page, when Mr. McCain has not been disclosed to discuss those subject of information before.

11.     Defendant - Whether General Steel's witness Travis McCain who is listed in Plaintiff's "will call" list above should be permitted to testify about those topics of information when he has not been disclosed as a witness on those subjects of information in this case. Plaintiff indicates that McCain will discuss damages, but he was not disclosed as a witness on this subject matter under Rule 26(a), was not mentioned in Plaintiff's damages disclosures (which referred to expert witnesses), and was not listed an as expert.

12.     Defendant - Whether Defendants are permitted under Rule 15 to amend their answer to the amended complaint to assert the business competition privilege to Plaintiff's intentional interference with prospective business advantage claim where the parties are indisputably competitors in the same industry vying for the same customers,

where this affirmative defense is not based on any new evidence or theory, such that Plaintiff will not be prejudiced in any way, and where such a defense will conform to the evidence.

## 10. SETTLEMENT

a.  On September 22, 2014, the parties and their counsel participated in a day-long settlement conference in Denver, Colorado, at JAMS before Retired Federal Judge William Downes, to discuss in good faith the settlement of the case. No settlement could be reached.

b.  The participants in September 22, 2014 Settlement Conference, included counsel, the parties (Defendant Ethan Chumley and General Steel's CEO Jeffrey Knight) and Retired Federal Judge Downes.

c.  The parties were promptly informed of all offers of settlement.

d.  Counsel for the parties do not intend to hold future settlement conferences. There is another pending federal case (General Steel v. Armstrong Steel and Ethan Chumley, 2013 cv 00769 MSK-KAT) and a Tenth Circuit appeal pending relating to Judge Brimmer's findings and orders against Armstrong Steel in 2010 cv 01398 PAB-KLM.  In the past two years, these parties have had at least three settlement conferences, including one before Retired Denver District Court Judge John McMullen and another before a mediator.

e.  It appears from the discussion by all counsel that there is no possibility of settlement.

f.  Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6 and have engaged in ADR.

## 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13.  TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1.  Trial is to a jury.  Equitable remedies will be decided by the Court.

2.  Trial is scheduled for four days commencing on August 24, 2015.

3.  The trial will take place in the United States District Court for the District of Colorado in courtroom A1001, located on the 10th floor North, of the Alfred A. Arraj, United States Courthouse Annex, 901 19th St. Denver, Colorado 80294 and

4.  Any other orders pertinent to the trial proceedings. None.

Dated August 18, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

APPROVED:

/s/ David S. Fein
David S. Fein
Patrick Frye
Building Services Group, LLC Legal
Department
10639 Bradford Road
Littleton, CO 80127

Attorneys for Plaintiff General Steel
Corporation

/s/ Kenneth E. Stalzer
Hugo Q. Gottschalk (#8525)
Craig R. May (#32267)
Kenneth E. Stalzer (#42896)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: gottschalk@wtotrial.com
        may@wtotrial.com
        stalzer@wtotrial.com

David S. Gingras
Gingras Law Office, PLLC
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Telephone: 480.264.1400
Facsimile: 480.248.3196
Email: david@gingraslaw.com