## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 14-cv-01932-REB-CBS

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

      Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually; and
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, doing business as
ARMSTRONG STEEL CORPORATION,

      Defendants.

---

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      The matter before me is the **Defendants' Motion for Summary Judgment**

[#106][1] filed April 17, 2015.  The plaintiff filed a response [#123], and the defendants

filed a reply [#129].  I grant the motion in part and deny it in part.

## I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and

§ 1332 (supplemental).

## II.  STANDARD OF REVIEW

      The purpose of a summary judgment motion is to assess whether trial is

necessary.  ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10th Cir. 1995).  FED. R. CIV.

---

[1]   "[#106]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

P. 56 (a) provides that the court may grant summary judgment when "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(a);** *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal citation and quotation omitted). Once such a motion has been supported properly, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied*, 540 U.S. 1027 (1995). In all summary judgment proceedings, the evidence in the record must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999).

### III. FACTS

This statement of facts is based on the evidence in the record viewed in the light most favorable to the plaintiff. The plaintiff is General Steel Domestic Sales, LLC, doing business as General Steel Corporation (General Steel). Defendant, Ethan

Chumley, is the Chief Executive Officer of Atlantic Building Systems, LLC, which is also a defendant.  Atlantic Building Systems does business as Armstrong Steel Corporation (Atlantic Building).  Both companies sell pre-engineered steel buildings.

In its complaint, General Steel alleges that the defendants, Ethan Chumley and Atlantic Building, make "it their practice to retaliate against General Steel through false and misleading internet publications."  *Complaint* [#49], ¶ 10.  General Steel alleges that the defendants use the internet to harm General Steel and derive business for themselves.  *Id*.  General Steel contends the defendants run ads on internet search engines which ads appear in response to searches for the words "General Steel," "General Steel Buildings," "steel buildings," and "metal buildings."  *Id*., ¶ 16.  According to General Steel, many of the ads run by the defendants contain derogatory information about General Steel and contain links to a portion of the Armstrong Steel Corporation website which also contains derogatory information about General Steel.  General Steel alleges that the internet search engine ads run by the defendants are false, misleading, and defamatory.  Based on the allegations in the complaint, General Steel asserts four claims: (1) unfair competition and unfair trade practices under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) libel and libel per se; (3) intentional interference with prospective business advantage; and (4) civil conspiracy.

Twenty statements on the Armstrong Steel website are at issue.  The statements at issue are depicted in Exhibit A and Exhibit B [#106-2 & #106-3] to the motion for summary judgment [#106].  Exhibit A depicts a portion of the Atlantic Building Systems website titled Industry Related Legal Matters (IRLM Page).  Mr. Chumley testifies that he created that portion of the Atlantic Building Systems website in February 2014.  *Affidavit of Ethan Chumley* [#106-1] (Chumley Affidavit), ¶ 3.  Exhibit A shows the IRLM

Page as it existed during April 2015.  *Id.*, ¶ 4.

With some exceptions, Exhibit A depicts the IRLM Page as it existed when it first was made part of the Atlantic Building Systems website.  *Id.*  In Exhibit A, posts on the IRLM Page are given numbers 1 through 37.  *Id.*, ¶ 5.  General Steel alleges that 20 of these posts support its claims in this case.  As numbered in Exhibit A, those posts are 1, 5, 6, 9, 11, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, & 37.

Exhibit B [#106-3] shows each of the 37 posts on the IRLM Page.  Each post includes a button labeled "Read More."  Exhibit B includes a link which leads to the information linked to the "Read More" button associated with each post on the IRLM page.  The "Read More" button links to third-party websites.  *Chumley Affidavit*, ¶ 15. As shown on the IRLM Page, each statement on the IRLM Page contains an excerpt from the document which can be seen in full when the "Read More" button is pushed.

Post 1 on the IRLM Page is illustrative of the format used on the IRLM page. The heading of post 1, a heading created by the defendants, reads: "Class Action Complaint - Heinbaugh et al v. General Steel Domestic Sales, LLC."   The first paragraph of post 1 is a quotation from courthousenews.com describing a class action lawsuit filed against General Steel.  This paragraph reads:

> U.S. District Court of Colorado - General Steel Corp. And its CEO Jeffrey Knight "infamous" telemarketers of steel-buildings, systematically defrauded their customers, in defiance of court orders, by, among other things, taking nonrefundable deposits and then refusing to deliver buildings for the price advertised, a class-action complaint claims in Federal Court.

When the reader presses the "Read More" button, the reader is linked to a page on courthousenews.com which omits the reference to "U.S. District Court of Colorado." Instead, the courthousenews.com page headlines this entry with "**General Steel**

**Accused of Defying Court Order** - DENVER (CN) -" *Exhibit B*, p. 2 (emphasis in original).  Following this language, the courthousenews.com page contains all of the language in the indented paragraph above, except for  "U.S. District Court of Colorado." At the end of the paragraph on courthousenews.com a link to the full text of the class action complaint is provided.

The second paragraph of post 1 on the IRLM Page contains a two sentence quotation from the class action complaint.  The quotation from the complaint speaks of General Steel "supposedly" cleaning up its deceptive business practices but alleging that its "basic business plan remained focused on two overriding goals - obtain a 'non-refundable' deposit from customers and never actually deliver a steel building to any customer for the price set forth in the contract."  Exhibit B, p. 1.  Again, the "Read More" button leads to the courthousenews.com page which contains a link to the full text of the class action complaint.  Immediately below, I summarize more briefly some of the other posts on the IRLM Page at issue in this case.  I describe the heading of each post, any summary authored by the defendants, the quotation included in the post, and the nature of the link provided with the "Read More" button.  Again, the details of all of the posts on the IRLM Page can be seen in Exhibit A and Exhibit B.

- Post 5 - Heading: "Attorney General Madrid Warns New Mexico Churches About Colorado Metal Building Company."  Summary: In essence, the summary states that New Mexico Attorney General issued a consumer alert warning churches and other organizations concerning General Steel. Quotation: The quotation includes three sentences from a November 14, 2005, article in the Albuquerque Journal about the warning of the attorney general.  "Read More" link: The "Read More" link leads to the full text of

the Albuquerque Journal article.

- Post 6 - Heading: "General Steel Domestic Sales, LLC v. Chumley."
Summary: The summary describes Mr. Chumley's history as a former employee of General Steel who left General Steel to work for a competing company and then formed Atlantic Building Systems.  The summary continues with a description of the claims and counterclaims in a case filed by General Steel against Mr. Chumley and Atlantic Building Systems in 2010.  Quotation: Post 6 includes brief quotations from the counterclaims of Mr. Chumley and Atlantic Building Systems, with citations to the court record.   "Read More" link: The "Read More" link links to the full text of a court order addressing the General Steel's motion to dismiss certain counterclaims of Armstrong Steel and granting that motion as to some of the counterclaims of General Steel.  Dismissal of these counterclaims is not noted in the summary.

- Post 14 - Heading: "Rock Limo Service v. General Steel Domestic Sales.
Summary: None.  Quotation: Post 14 includes quotations from a 2013 order of the United States District Court for the Northern District of Illinois, Eastern Division.  The quotations describe a contract between the petitioners and General Steel and the deposits paid to General Steel by the petitioners.  The quotations end with this sentence: "Petitioners demanded return of their deposit, but General Steel refused to pay it." Exhibit B, p. 33.   "Read More" link: The "Read More" link leads to the full text of the court opinion quoted.

In the opinion quoted in post 14, the court reviewed the conclusions of an

arbitrator who entered an arbitration award in favor of General Steel and against the

petitioners,  Rock Limo Service and Nikola Akrap, and confirmed the award of the

arbitrator.  In essence, the opinion finds that the arbitrator found General Steel properly

retained the deposit tendered to General Steel by Rock Limo Service.  The arbitrator

found it was the Rock Limo Service, and not General Steel, that breached the

applicable contract.  The court confirmed the award of the arbitrator and denied the

motion of the petitioners to vacate the arbitration award.

The IRLM Page contains a general disclaimer.  "These external hyperlinks

represent allegations made by parties (which may or may not ultimately be adopted by a

judge/jury) and findings of fact and law by judges/arbitrators. Some of the cases

mentioned here may be ongoing, dismissed, settled and/or may not be final."  Exhibit A,

p. 1.

Also at issue are the internet search engine ads run by the defendants.

According to General Steel, when General Steel customers, prospective customers, or

others search Google and Yahoo/Bing using the words "General Steel" or "General

Steel Buildings," ads paid for by the defendants appear in the search results.  At some

point, according to General Steel, the defendants paid for the ads to appear in response

to internet searches for "steel buildings" and metal buildings."  *Response* Exhibit 2

(Chumley Deposition), 215:16 - 216:1.  The internet search engine ads contain the text

shown below.

Advertisement One:

Don't Send Them A Deposit - ArmstrongSteelBuildings.com
Ad www.armstrongsteelbuildings.com/
Until You've Seen These Lawsuits. Read This Before It's Too Late!

Advertisement Two:

Before You Send a Deposit - Do Your Research First
Ad www.armstrongsteelbuildings.com/ (855) 882-6555
Read This Before It's Too Late!
View Gallery - Virtual Building - Design It Online - 1.800.345.4610

Advertisement Three:

Steel Building *Lawsuits* - ArmstrongSteelBuildings.com
www.armstrongsteelbuildings.com/ +1 800-345-4610
4.8 rating for armstrongsteelbuildings.com
Rock Limo Lost $125,383 in Deposits *Beware* Research Before You Buy!
Court Rulings · Lawsuits · Buyer Beware · Complaints

Advertisement Four:

Don't Send Them A Deposit - Until You've Seen These Lawsuits.
www.ArmstrongSteelBuildings.com
Until You've Seen These Lawsuits. Read This Before It's Too Late!

Advertisement Five:

Consumer ALERT! - Have You Seen These Customer Complaints?
www.ArmstrongSteelBuildings.com
Have You Seen These Customer Complaints? Read This Before Its Too Late!

Advertisement Six:

Read Customer *LAWSUITS*
www.armstrongsteelbuildings.com/ +1 800-345-4610
4.7 rating for armstrongsteelbuildings.com
"General Told Her 'We Will Keep You In Court Until We Break You'"
Court Rulings · Lawsuits · Buyer Beware · Complaints

*Final Pretrial* Order [#173], pp. 11 - 12; Complaint [#49], Exhibits 2, 3, 4, & 5 [#49-2,

#49-3, #49-4, #49-5]; *Response* [#123], Exhibit 8 [#123-3], pp. 8 - 14.

Addressing the IRLM Page, General Steel contends the defendants have

"collected old documents from long-resolved General Steel litigation and wholly created

a website conveying facts that are false as to General Steel's current operations.

*Response* [#123], p. 8.  In addition, General Steel argues the title fo the IRLM Page,

"Industry Related Legal Matters," is misleading because the page allegedly appears to be an objective site disclosing industry lawsuits, but actually is a page which targets General Steel for criticism. *Id.*, p. 9. Further, General Steel claims the paid ad content of the defendants, ads which appear in response to internet searches, is false and misleading. *Id.*

In their motion for summary judgment [#106], the defendants assert eight bases for dispositive relief. One, the defendants are immune from all claims based on provisions of the Communications Decency Act. Two, the statements at issue are protected by the fair reporting privilege. Three, some of the statements are non-actionable expressions of opinion. Four, the statements are true and, therefore, may not be a basis of liability. Five, the false advertising claim fails because none of the statements is literally false. Six, the plaintiff has not presented evidence of customer confusion to support the false advertising claim. Seven, the plaintiff cannot prove the elements of tortious interference with prospective business advantage. Eight, the plaintiff has not presented sufficient evidence to support its claim of civil conspiracy. I address each of these issues seriatim.

## IV.  IMMUNITY UNDER THE COMMUNICATIONS DECENCY ACT

Title 47 U.S.C. § 230, part of the Communications Decency Act, creates an immunity to many causes of action that could otherwise hold a computer service provider liable for information originating with a third party. Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

Section 230 sets three limitations on the immunity provided in that section. *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1196 (10th Cir. 2009). First, immunity is

available only to a "provider or user of an interactive computer service." *Id*.   In relevant part,

§  230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet...."  Second, the liability must be based on the actions by the defendant as a "publisher or speaker."  § 230(c)(1).  Third, immunity may be claimed only with respect to "information provided by another information content provider." ***Accusearch***, 570 F.3d at 1196.  Section 230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  If a defendant fails to qualify under any of the three qualifiers, the defendant is not entitled to § 230 immunity.

<u>A.  Immunity Limit - Information Content Provider</u>

General Steel argues the defendants are not entitled to § 230 immunity because the defendants wholly or partially created or developed the information at issue.  As a result, General Steel asserts, the defendants are information content providers under § 230.  This argument relates to the third limitation on § 230 immunity noted above.

> A provider of an interactive computer service . . . may claim CDA immunity only with respect to "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Thus, an interactive computer service that is also an "information content provider" of certain content is not immune from liability arising from publication of that content.

***Accusearch***, 570 F.3d at 1197.   As used in § 230(f)(3), a service provider is responsible for the creation or development of information, and thus becomes an information content provider as to that information,  if the service provider "in some way

specifically encourages development of what is offensive about the content."

*Accusearch*, 570 F.3d at 1199.  In this context, I read the use of the word "offensive" to mean unlawful or legally actionable.  The *Accusearch* court held that Accusearch was a content provider because it "solicited requests for confidential information protected by law, paid researchers to find it, knew that the researchers were likely to use improper methods, and charged customers who wished the [confidential] information to be disclosed."  *Id*. at 1201.

On the other hand, "[o]ne is not 'responsible' for the development of offensive content if one's conduct was neutral with respect to the offensiveness of the content (as would be the case with the typical Internet bulletin board)."  *Id. at 1199.*  For example, in *Ben Ezra*, America Online (AOL) posted on three occasions incorrect information about the stock price and share volume of a certain corporation.  *Ben Ezra*, 206 F.3d at 983.  AOL purchased the information from a third party vendor.  The court found that AOL did nothing to solicit the erroneous information.  *Id*. at 985.  Rather, AOL asked the third party vendor to correct errors.  *Id*.  As read by the *Accusearch* court, the *Ben Ezra* court held AOL was not an information content provider for purposes of § 230, because AOL "had done nothing to encourage what made the content offensive - its alleged inaccuracy.  America Online's conduct was neutral with respect to possible errors in the stock quotations.  It was therefore not responsible for the offensive content."  *Accusearch*, 570 F.3d  at 1199 - 1200.

Last year, the United States Court of Appeals for the Sixth Circuit reviewed decisions from sister circuits to determine a workable measure of the term "development of information," as that term is used in § 230(f)(3).  *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398 (6th Cir. 2014).  The *Jones* case

concerned posting of defamatory content about the plaintiff on the Dirty World website by third party users of the website.  On some occasions, the operator of the website added short comments about certain posts, including some of the defamatory posts at issue.  Consistent with many sister circuits, the *Jones* court adopted "the material contribution test to determine whether a website operator is responsible, in whole or in part, for the creation or development of [allegedly tortious] information."  *Id*. at 413 (insertion of language in original; internal quotation omitted).

Reviewing several relevant decisions, the *Jones* court concluded that taking actions necessary to display content created or developed by another does not constitute development of information for the purpose of § 230(f)(3).  *Id*. at 414.  Inviting or encouraging third parties to post content does not constitute development.  *Id*.  When an operator of a website ratifies or adopts third party content, including through the posting of commentary by the website operator, the website operator does not develop the information.  *Id*. at 415.  Further, choosing to publish or not to publish third party content does not constitute development.  *Id*. at 415 - 416.  For the last proposition, the *Jones* court relied in part on *Zeran v. America Online, Inc*.  In *Zeran*, the United States Court of Appeals for the Fourth Circuit held that § 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content . . . ."  129 F.3d 327, 330 (4th Cir. 1997).  Further, minor editing of content developed by third parties does not constitute development, as long as the changes do not contribute to the false, misleading, or otherwise unlawful nature of the underlying information.  *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* , 521 F.3d 1157, 1170 (9th Cir. 2008).

General Steel notes that the posts at issue were not submitted to the IRLM Page by third parties. Rather, they were created by Mr. Chumley from information he obtained from the internet. Although many cases addressing § 230 immunity involve posts made on websites by third parties, nothing in § 230 or the relevant case law limits § 230 immunity to information submitted directly to a website by a third party. However, it must be noted that some of the cases on which the *Jones* court relied distinguish between information provided to a website operator, but not intended for posting on the internet, and information provided to a website operator with an intention or expectation that the information will be posted on the internet. *See, e.g., Batzel v. Smith*, 333 F.3d 1018, 1034 (9th Cir. 2003); *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* , 521 F.3d 1157, 1170 (9th Cir. 2008). Addressing this issue, the *Batzel* court held:

> a service provider or user is immune from liability under § 230(c)(1) when a third person or entity that created or developed the information in question furnished it to the provider or user under circumstances in which a reasonable person in the position of the service provider or user would conclude that the information was provided for publication on the Internet or other "interactive computer service."

*Batzel*, 333 F.3d at 1034. In the present case, all of the quotations and links on the IRLM Page are information obtained from the internet and published by the defendants on their website on the internet. When information is readily available on the internet and is obtained from the internet, it is reasonable to conclude that the information is provided for publication on the internet.

Addressing the statements at issue in the present case, the links to third party websites on the IRLM Page are within the purview of § 230 immunity because the information behind those links was created or developed by third party information

content providers.  The first paragraph of post 1 is within § 230 immunity because that paragraph is, with one inconsequential exception, a complete quotation of information on a third party website, couthousenews.com.

On the other hand, the six internet search ads developed by the defendants do not fall within the ken of § 230 immunity.  This is true because the defendants created and developed the content of those ads.

The § 230 immunity question is focused primarily on the posts created by the defendants on the IRLM Page which contain quotations from and summaries of the information provided in the links to third party websites.  The defendants argue they did not develop this information within the meaning of § 230, because the 20 posts in question accurately quote and summarize information and link to information developed by third parties and available on the internet.  Most of the posts on the IRLM Page contain a heading listing the parties to a lawsuit, sometimes a brief summary of the lawsuit, often a quotation or quotations from a document filed in the lawsuit, and a link to the full text of the document quoted.  Most of the documents quoted and summarized on the IRLM Page are court orders in the cases described on the page.  In the case of post 1, the document quoted is a class action complaint.  Posts 5 and 11 briefly summarize articles written about General Steel, quote those articles, and include a link to the full text of the articles on third-party websites.

In its response [#123], General Steel contends the defendants developed the content of the IRLM website in ways that are material in relation to the defendants' claim of immunity under § 230.  General Steel notes that Mr. Chumley created the IRLM web page and others may not and can not post information there.  In addition, General Steel argues that the complaints and orders quoted and linked on the IRLM Page would not

otherwise have been readily visible by internet users who search for "General Steel" or similar key words.  General Steel claims the excerpts on the IRLM Page highlight inflammatory and disparaging parts of "unproven Complaints and other pleadings in order to harm General Steel and steal its business."  *Response* [#123], p. 5.  Actually, the IRLM Page quotes and references only one complaint or other pleading.  However, at many points on the IRLM Page, the defendants summarize allegations made against General Steel by various plaintiffs, as those allegations were summarized by a court in an order.

Noting the less than neutral nature of the IRLM Page, General Steel notes that Mr. Chumley did not post a court order dated May 7, 2013, in which Mr. Chumley and Armstrong Steel were found liable for wilful and false advertising targeting General Steel.  Mr. Chumley's purchase of internet advertising which leads users to the IRLM Page shows, General Steel contends, that Mr. Chumley's conduct in developing the IRLM Page is not neutral.

General Steel does not claim that the links to the documents referenced on the IRLM Page lead a user to inaccurate versions of the documents referenced.  General Steel does not claim that the IRLM Page contains inaccurate quotations of the court orders, the class action complaint, and the two articles quoted there.  However, citing Exhibit 3 [#106-3] generally, General Steel contends some of the quotations on the IRLM Page include separate, non-consecutive portions of the document quoted.  In addition, General Steel notes, Mr. Chumley wrote the summary descriptions contained in some of the posts, and he chose the excerpts which are quoted in each post.  These tasks were done, Mr. Chumley says, using his own editorial judgment.

Based on the undisputed facts in the record and the law outlined above, I find

and conclude that, for the purpose of § 230 immunity, the defendants developed certain information shown on the IRLM Page.  To the extent the defendants chose certain summaries and quotations describing the referenced court proceedings, failed to accurately describe the proceedings as a whole, and posted those quotations and summaries on the IRLM Page, the defendants developed the information they posted on that page.  These editorial choices can be seen as a choice to emphasize unflattering allegations made against General Steel without summarizing or quoting information which reflects the nature and outcome of the court proceeding described.  The claims of General Steel are founded on its contention that the defendants created an inaccurate image of General Steel by highlighting on the IRLM Page unflattering allegations against General Steel without also describing the context of those claims or how those claims were resolved.  Highlighting the unflattering allegations without providing other relevant information reasonably can be seen as contributing to the allegedly defamatory or otherwise actionable nature of the underlying information.  Such actions specifically encourage development of what is allegedly unlawful or legally actionable about the content and, thus, constitutes development of the information for the purpose of § 230 immunity.  *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1196 (10th Cir. 2009).

My conclusion could be seen to be contrary to the statement of the United States Court of Appeals for the Fourth Circuit that § 230 bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content . . . ."  *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  However, I conclude that the United States Court of Appeals for the Ninth Circuit stated more accurately how editing

16

of content developed by third parties may or may not be development of information for the purpose of § 230 immunity.  "(M)inor editing of content developed by third parties does not constitute development, as long as the changes do not contribute to the false, misleading, or otherwise unlawful nature of the underlying information." ***Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*** , 521 F.3d 1157, 1170 (9th Cir. 2008).

Having reviewed all of the posts at issue, I find that the summaries and quotations used by the defendants in posts 5, 9, and 11 in the IRLM Page are reasonably accurate summaries of the underlying information developed by third parties.  As to these three posts, the undisputed facts in the record show the defendants did not develop the relevant information by highlighting unflattering allegations without providing other relevant information.  As to these three posts, the defendants are providers of an interactive computer service, the plaintiff seeks to impose liability on the defendants as publishers or speakers of the information on the IRLM Page, and the information in question was provided by other information content providers.  By organizing, quoting, and summarizing this information, the defendants did nothing to specifically encourage the development of what General Steel claims is unlawful or legally actionable about the underlying content.  As to these three posts, the defendants are entitled to § 230 immunity.  As noted previously, the first paragraph of post 1 also is within § 230 immunity.

On the other hand, as to all of the other posts, the second paragraph of post 1 and posts 6, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, 37, the evidence in the record shows the defendants specifically encouraged development of what is allegedly unlawful or legally actionable about the underlying content.  For the purpose of

§ 230 immunity, this constitutes development of the information.  A comparison of the summaries and quotations created by the defendants with the relevant underlying document indicates that the defendants developed this information by highlighting what is allegedly unlawful or legally actionable about the information.  As to these posts, the defendants are information content providers under § 230 who are not entitled to § 230 immunity.

### B.  Immunity As To Lanham Act Claim

Section 230(e)(2) provides a limit on § 230 immunity: "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property."  General Steel contends its Lanham Act claim is an intellectual property claim and, therefore, considerations of § 230 immunity is irrelevant.

The Lanham Act claim is brought under 15 U.S.C. § 1125(a)(1)(A).  That statute creates a cause of action for the use in commerce of any word, term, name, symbol, or false or misleading description or representation of fact which is likely to cause confusion or mistake as to the goods, services, or commercial activities of another person.  Section 1125 is part of subchapter III of chapter 22 of title 15 of the United States Code.  Generally, chapter 22 concerns trademarks.  Subchapter III of chapter 22 concerns proceedings involving trademarks.  Particularly given this context, a false advertising claim under § 1125 implicates trademark law, an ilk of intellectual property law.  The § 1125 claim of the plaintiff is an intellectual property claim.  Therefore, this claim does not fall within the ambit of § 230 immunity claimed by the defendants.

### C.  Conclusion

Immunity under § 230 is applicable to the links to third party websites on the IRLM Page.  The information behind those links was created or developed by third party

information content providers. The defendants are entitled to § 230 immunity as to the first paragraph of post 1 and the summaries and quotations used by the defendants in posts 5, 9, and 11 on the IRLM Page. However, the defendants are not entitled to § 230 immunity as to the summaries and quotations used by the defendants in all of the other IRLM Page posts at issue. The immunity provided by § 230 does not apply to the Lanham Act claim under § 1125 or to any claim based on the six internet search ads created by the defendants.

## V. FAIR REPORT PRIVILEGE

As to claims based on the posts on the IRLM Page involving the class action complaint and court orders, the defendants contend they are shielded by the fair report privilege. The common law doctrine of fair report makes privileged a report of in-court proceedings if the report is fair and substantially correct. *Quigley v. Rosenthal*, 327 F.3d 1044, 1062 (10th Cir. 2003) (citing Restatement (Second) of Torts § 611). The Colorado courts also apply the fair report privilege. *Wilson v. Meyer*, 126 P.3d 276, 279 (Colo. App. 2005) (citing Restatement (Second) of Torts § 611). In **Wilson**, the court held that the fair report privilege was not limited to court proceedings, but is applicable also in other public proceedings. *Id*. at 280.

Both the Tenth Circuit and the Colorado courts refer to § 611 of the Restatement (Second) of Torts when applying the fair report privilege. Section 611 provides:

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

*Restatement (Second) of Torts* § 611 (1977). Comment f to § 611 details the accuracy requirement.

The rule stated in this Section requires the report to be accurate. It is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings.  Not only must the report be accurate, but it must be fair.  Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus, although it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as for example a report of the discreditable testimony in a judicial proceeding and a failure to publish the exculpatory evidence, or the use of a defamatory headline in a newspaper report, qualification of which is found only in the text of the article. The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.

It is not always necessary that the entire proceedings be reported at one time. However, when a newspaper publishes from day to day the report of a judicial proceeding, it may not, after reporting derogatory parts, fail to publish the further proceedings that tend to vindicate the person defamed. The fact that the report of one side of a trial is not as complete as that of the other side is a factor to be considered in determining whether the report, as a whole, is unfair.

**Restatement (Second) of Torts** § 611, comment f (1977).

Applying these standards to the quotations and summaries posted by the defendants on the IRLM Page, I find and conclude that the fair report privilege is applicable to the quotations and summaries in posts 5 and 9 on the IRLM Page.  Post 5 is a report of an official action by the Attorney General of the State of New Mexico.  On the IRLM Page, the defendants provide a reasonably accurate summary of this action. Post 9 concerns the findings, conclusion, order, and judgment of a Colorado state court in a case brought against General Steel by the Colorado Attorney General.  On the IRLM Page, the defendants provide a reasonably accurate summary of this action. Using the language of § 611, this summary is a fair abridgement of the occurrence reported.

Essentially for the same reasons discussed concerning § 230 immunity, I find that the summaries and quotations provided by the defendant in posts 1, 6, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, 37 on the IRLM Page are not accurate and complete or a fair abridgement of the proceeding reported.  Therefore, the fair report privilege does not apply to the quotations and summaries created by the defendants and contained in these posts.

## VI.  EXPRESSIONS OF OPINION

The defendants contend the pure opinion doctrine precludes General Steel from making a claim based on expressions of opinion in the internet search ads of the defendants.  In the view of the defendants, its statements warning consumers to "look out" are non-actionable expressions of opinion.  An expression of harsh judgment with a link to source material is, in the view of the defendants, a statement of opinion and not fact.  The defendants claim that such statements of opinion are protected by the First Amendment.

The plaintiff contends the defendants have waived or forfeited a defense based on the First Amendment.  The defendants did not plead such a defense in their answer [#57].  No such defense is included in the Final Pretrial Order  [#173].  Given these circumstances, I conclude that the defendants have waived or forfeited a defense based on the First Amendment.[2]

---

[2]  "Waiver is accomplished by intent, but forfeiture comes about through neglect."  **See United States v. Zubia-Torres**, 550 F.3d 1202, 1205 (10th Cir.2008) (**quoting United States v. Carrasco-Salazar**, 494 F.3d 1270, 1272 (10th Cir.2007)).  **See also Richison v. Ernest Group, Inc.**, 634 F.3d 1123, 1128 (10th Cir. 2011).

## VII.  DEFENSE OF TRUTH

Addressing two of the internet search advertisements, the defendants contend the statements in those advertisements are true.  If so, the defendants argue, these statements may not be the basis for a claim of defamation, tortious interference with prospective business advantage, or violation of the Lanham Act.

Advertisement Three includes the statement "Rock Limo Lost $125,383 in Deposits."  The court opinion cited in post 14 on the IRLM Page states that Rock Limo and its operator, Nikola Akrap, breached their contract with General Steel "and General Steel was entitled to retain the $125,383.68 in deposits it had received."  *Akrap v. General Steel Domestic Sales, LLC*, 2013 WL 6008928, at *4 (N.D. Ill. 2013).  Based on this opinion, the defendants contend the statement in Advertisement Three is true.

For the purpose of a defamation claim, a statement is defamatory if the statement tends to harm the reputation of a person by lowering the person in the estimation of at least a substantial and respectable minority of the community.  CJI-Civ. 4th 22:7.  However, truth is a defense to a claim of defamation.  Truth is proven when the defendant shows the statement is substantially true, meaning the substance or gist of the statement is true.  CJI-Civ. 4th 22:14.  General Steel contends this statement is false and defamatory because, as presented by the defendants, the statement clearly implies that General Steel wrongfully withheld the Rock Limo deposit when, in truth, General Steel properly withheld the deposit.  For the purpose of the claim of defamation, this divarication presents disputed issues of material fact for resolution by a jury.

To prove its Lanham Act claim as to Advertisement Three, General Steel must show, *inter alia*, that the defendants made false or misleading representations of fact in

their commercial advertising and that the representations are likely to influence a purchasing decision.  "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true, but likely to mislead or confuse consumers."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997) (cited with approval in *Zoller Laboratories, LLC. v. NBTY, Inc.*, 111 Fed.Appx. 978, 982 (10th Cir. 2004)).  To prove its claim of tortious interference with prospective business advantage, General Steel must prove, *inter alia*, that the defendants used improper means to cause a third person not to enter into a contract with General Steel.  A false or misleading representation may constitute an improper means.  For the purposes of the claims under the Lanham Act and for tortious interference, the evidence outlined above presents disputed issues of material fact for resolution by a jury.

Advertisement Six includes the statement "General Told Her 'We Will Keep You In Court Until We Break You.'"  The court opinion cited in post 9 on the IRLM Page finds that a General Steel customer involved in a dispute with General Steel received a phone call from a General Steel representative.  The General Steel representative told the customer "we'll keep you in court until we break you."  *Motion* [#106], Exhibit B, Post 9, read more URL, p. 24.  The customer filed suit against General Steel, and the suit was settled when General Steel fully refunded the deposit to the customer.  *Id.*, pp. 24 - 25.  For the purposes of the claims of defamation, tortious interference, and violation of the Lanham Act, this evidence presents disputed issues of material fact for resolution by a jury.

## VIII.  LANHAM ACT - CUSTOMER CONFUSION

Addressing the Lanham Act claim, the defendants argue this claim fails because the plaintiffs have not presented evidence of customer confusion caused by the challenged statements.  When an advertisement is literally false, a Lanham Act claim may be established without evidence of consumer deception.  *Scotts Co. v.. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir.2002).  When the statement at issue is literally true, but the plaintiff claims the statement is misleading, the plaintiff must present extrinsic evidence establishing that the challenged advertisement tends to mislead or confuse consumers.  *Id*. at 272–73.  Confusion or deception is presumed, however, if either intent to deceive or literal falsity is shown.  *Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave.*, 284 F.3d 302, 316 (1st Cir. 2002).

General Steel is relying on a theory of intentional deception in pursuing its claim under the Lanham Act.  *Response* [#123], p. 15.  The defendants do not seek summary judgment on the issue of intentional deception.  A claim under the Lanham Act based on a theory of intentional deception does not require proof of consumer confusion.  Thus, the defendants are not entitled to summary judgment on the Lanham Act claim based on the purported lack of evidence of consumer deception.

## IX.  TORTIOUS INTERFERENCE WITH
## PROSPECTIVE BUSINESS ADVANTAGE

The defendants contend General Steel has not produced evidence to show that the defendants induced or otherwise caused a third party not to enter into a contract with General Steel.  General Steel relies on the reports of their two expert witnesses as supplying evidence that General Steel lost sales as a result of the actions of the defendants.  In addition, General Steel notes a statement by Johnathan Hochman, a

witness for the defense, in which Mr. Hochman conceded that General Steel probably

suffered a "(s)mall loss of sales" as a result of the advertising of the defendants.

*Response* [#123], Exhibit 1 (Hochman Deposition), 262:7 - 12.  This evidence is

sufficient evidence of the loss of one or more contracts caused by the actions of the

defendants to sustain the viability of the claim for trial.

## X.  CIVIL CONSPIRACY

According to the defendants, General Steel has not produced evidence of

underlying unlawful conduct necessary to support its civil conspiracy claim.  On the

current record, the evidence is sufficient to sustain for resolution at trial the claims for

false advertising, defamation, and intentional interference with prospective business

advantage.  That evidence is sufficient to support the unlawful conduct element of the

civil conspiracy claim.

## XI.  CONCLUSION & ORDERS

Concerning the state law claims, the defendants are entitled to immunity under

47 U.S.C. § 230 to the extent the state law claims are based on posts 5, 9, and 11 on

the IRLM Page.  Section 230 immunity also is applicable to the links to third party

websites on the IRLM Page.  On the other hand, the defendants are not entitled to

§ 230 immunity as to all of the other posts on the IRLM Page, the second paragraph of

post 1 and posts 6, 13, 14, 17, 20, 22, 23, 25, 26, 27, 29, 32, 33, 35, 36, 37,

The fair report privilege shields the defendants from all claims to the extent those

claims are based on posts 5 and 9 on the IRLM Page.  On the other hand, the fair report

privilege does not shield the defendants from claims based on the summaries and

quotations provided by the defendant in posts 1, 6, 13, 14, 17, 20, 22, 23, 25, 26, 27,

29, 32, 33, 35, 36, 37 on the IRLM Page.

On all other issues raised by the defendants in their motion for summary judgment, the defendants have not demonstrated a basis for the entry of summary judgment.

**THEREFORE, IT IS ORDERED** as follows:

1.  That under Fed. R. Civ. P. 56, the **Defendants' Motion for Summary Judgment** [#106] filed April 17, 2015, is granted to the extent the defendants seek a judgment holding that they are entitled to immunity under 47 U.S.C. § 230 as to the state law claims of the plaintiff to the extent those claims are based on the quotations and summaries in posts 5, 9, and 11 on the IRLM Page;

2.  That under Fed. R. Civ. P. 56, the **Defendants' Motion for Summary Judgment** [#106] filed April 17, 2015, is granted to the extent the defendants seek a judgment holding that the fair report privilege shields them from the claims of the plaintiff to the extent those claims are based on the quotations and summaries in posts 5 and 9 on the IRLM Page; and

3.  That otherwise, the **Defendants' Motion for Summary Judgment** [#106] filed April 17, 2015, is denied.

Dated August 18, 2015, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge